# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| POLARIS POWERLED TECHNOLOGIES, LLC, | ) ) ) |
| Plaintiff, | ) Civil Action No. 2:17-cv-00715-JRG ) ) |
| v. | ) ) **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG DISPLAY CO., LTD., | ) ) ) ) ) |
| Defendants. | ) |

## REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING

▬▬▬▬▬▬▬▬

**TABLE OF CONTENTS**

I.   STATEMENT OF THE ISSUES ................................................................................... 3

II.  ARGUMENT .................................................................................................................. 4

    A.   Microsemi Misconceives the "All Substantial Rights" Test .................................. 4

    B.   Microsemi Retained Substantial Rights in the '117 Patent, Such That Polaris Lacked Prudential Standing When This Suit Was Filed ............................ 4

    C.   Plaintiff's Attempts to Elevate Form Over Substance Are Unpersuasive. ............. 8

        1.   Microsemi Contributed All of Polaris' Assets and in Return Received ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ........................ 8

        2.   Plaintiff Ignores That Microsemi's "Assignment" Of The Patent to Polaris Was Made Subject To The Terms Of Microsemi's LLC, Contribution, and ▮▮▮▮▮ Agreements With Polaris. ............................... 9

        3.   Because Microsemi Exercised Complete Control Over Polaris, The Court Should Look Beyond Polaris' Formal Corporate Identity .............. 10

    D.   Polaris' Lack of Standing Cannot be Corrected by the April 27 Amendments. ......................................................................................................... 13

    E.   Microsemi's Absence From the Litigation Continues to Prejudice Defendants. ............................................................................................................ 15

III. CONCLUSION ............................................................................................................. 15

# **TABLE OF AUTHORITIES**

**CASES**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
   2016 WL 3186890, at *2 (D. Del. June 3, 2016)........................................................................ 10
*Alps South LLC v. Ohio Willow Wood Co.*,
   787 F.3d 1379, 1384–85 (Fed. Cir. 2015).......................................................................... 15, 16
*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
   434 F.3d 1336, 1342 (Fed Cir. 2006)....................................................................................... 7
*AsymmetRx, Inc. v. Biocare Med., LLC*,
   582 F. 3d 1314, 1321 (Fed. Cir. 2009) .................................................................................... 8
*Atmel Corp. v. Authentec, Inc.*,
   490 F. Supp. 2d 1052, 1055 (N.D. Cal. 2007) .................................................................. 13, 14
*Clouding IP, LLC v. Google Inc.*,
   61 F. Supp. 3d 421 (D. Del. 2014)........................................................................................ 10
*Diamond Coating Techs., LLC v. Hyundai Motor Am.*,
   823 F.3d 615, 620 (Fed. Cir. 2016).......................................................................................... 7
*Enzo APA & Son, Inc. v. Geapag A.G.*,
   134 F.3d 1090, 1093 (Fed. Cir. 1998)...................................................................................... 3
*Hologic v. Minerva Surgical*,
   163 F. Supp. 3d at 122 ........................................................................................................ 12
*Hologic, Inc. v. Minerva Surgical*,
   163 F. Supp. 3d 118, 122 (D. Del. 2016).............................................................................. 11
*Intellectual Prop. Dev. v. TCI Cablevision of Cal., Inc.*,
   248 F.3d 1333, 1344 (Fed. Cir. 2001)................................................................................... 10
*Mentor H/S, Inc. v. Med. Device All., Inc.*,
   240 F.3d 1016, 1019 (Fed. Cir. 2001 ................................................................................... 16
*Propat Intern. Corp. v. Rpost, Inc.*,
   473 F.3d 1187, 1191 (Fed. Cir. 2007)..................................................................................... 1
*Propat*, 473 F.3d at 1191
   (citing *Sicom*, 427 F.3d at 979) .............................................................................................. 5
*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
   427 F.3d 971, 979 (Fed. Cir. 2005)......................................................................................... 2
*Software Rights Archive, LLC v. Google Inc.*,
   2009 WL 901361, at *1, 4 (E.D. Tex. Mar. 31, 2009)................................................ 11, 12, 13
*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*,
   944 F.2d 870, 875 (Fed. Cir. 1991).......................................................................................... 6

Plaintiff's Opposition to Defendants' Motion to Dismiss is notable for what it does not deny. Plaintiff cannot deny that Microsemi formed Polaris in July 2017 for the express purpose of ▌ owned by Microsemi. Dkt. 65-3 at ▌. Plaintiff also cannot deny that Microsemi directly contributed the only assets possessed by Polaris at the time it filed this suit, namely ▌ and certain Microsemi patents, *id.* at ▌ ▌; Dkt. 65-6 at ▌ (▌). And Plaintiff cannot deny that in return, Microsemi retained numerous rights over both Polaris and its patent assets, including:

- ▌, Dkt. 65-6 at ▌;

- The power to ▌, Dkt. 65-2 at ▌, the power to ▌, *id.* at ▌, and ▌, *id.* at ▌;

- Through the ▌ requirement and the ▌, the power to ▌, *id.* at ▌;

- The right to ▌, *id.* at ▌;

- The power to ▌, Dkt. 65-4 at ▌; and

- Responsibility for ▌, *id.* at ▌.

As noted in Defendants' Motion, the rights retained by Microsemi go beyond those retained by parties found to lack prudential standing in similar cases. *See* Mot. (Dkt. 65) at 8–13. For example, the Federal Circuit has held that a restriction on the "right to dispose of a [patent] asset," like those powers possessed by Microsemi, is by itself "'fatal' to the argument that [an] agreement transferred all substantial rights in the patent." *Propat Intern. Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007) (citing *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 979 (Fed. Cir. 2005)).

1

And here, Microsemi did not merely restrict Polaris' rights to dispose of the '117 patent—Microsemi ███████████████████████████████████████ Dkt. 65-6 at ████.

Rather than deny the existence of these retained rights in the '117 patent, Plaintiff's opposition attempts to recharacterize them in a way that elevates form over substance. Specifically, Plaintiff argues that: (a) Microsemi transferred all rights in the '117 patent to Polaris because the transfer document was titled an "Assignment," even though that purported "Assignment" was made pursuant to the numerous rights that Microsemi reserved in the patent, Opp. (Dkt. 86) at 12–16; (b) Polaris and its Board members should be viewed as independent entities from Microsemi, *id.* at 2–4, 20–22, even though the Polaris corporate agreements required ███████████████████████████████████████████, every Polaris officer/employee was associated with Microsemi, and Polaris otherwise did not obey corporate formalities; and (c) Microsemi was an unimportant ████████████████, *id.* at 2, 6; Dkt. 84 at 1–2, even though Microsemi contributed all of Polaris' assets and possessed ██████████████████████████.

If, as Microsemi argues, Polaris has never had a prudential standing problem, it is difficult to fathom why, on April 27, 2018, Microsemi dramatically altered ██████████████ ████████████████████████ (Dkt. 65-9 at █████████████████████ ██████████████████████; *id.* at █████), reduced its ████████████████ ████ ████ ████ ████ ████ ████ ██ (*compare* Dkt. 65-2 at ██ ██ ███████ *with* Dkt. 65-9 at § ██████████████████████████████) and ██ █████████████████████ (Dkt. 65-9 at █████████). Polaris' explanation for this dramatic change—that Polaris was ████████████████████████████ Opp. at 10—is

2

factually unsupported.[1]  The more plausible explanation for Microsemi's April 27 overhaul of Polaris' structure is that Defendants had inquired regarding Polaris' standing, Polaris' interrogatory responses regarding its corporate structure were due in three days,[2] and Microsemi recognized that the substantial rights it retained in the '117 patent had deprived Polaris of standing. Because under controlling Federal Circuit precedent "nunc pro tunc assignments are not sufficient to confer retroactive standing," *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998), dismissal is appropriate here.

## I. STATEMENT OF THE ISSUES[3]

Pursuant to Local Rule CV-7, the issues to be decided by the Court are:

1. Whether Microsemi's control over assignment of the '117 patent and assertion of the '117 patent in litigation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, entitlement to ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and responsibility for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, taken together, resulted in Microsemi retaining substantial rights in the '117 patent at the time Polaris filed this suit, such that Polaris lacked prudential standing;

2. Whether the April 27, 2018 agreements between Polaris and Microsemi can retroactively cure a prudential standing defect that existed at the time the present suit was filed.

---

[1] Plaintiff has provided no evidence that Polaris (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Dkt. 65-3 at ▮▮▮▮) has grown or attempted to grow beyond its original three Microsemi-affiliated employees (Messrs. Yocca, Brandi, and Ferguson).

[2] Polaris' responses to Samsung's interrogatories were originally due on April 9, but Polaris requested that the deadline be extended by three weeks to April 30. Dkt. 48 at 1.  It was during this extra 21-day period that Microsemi amended Polaris' governing agreements and Microsemi's ▮▮▮▮ agreement with Polaris. *See* Dkt. 65-9; Dkt. 65-10; Dkt. 65-11.

[3] Defendants inadvertently omitted the required Statement of Issues in their opening brief.

3

## II.   ARGUMENT

Having founded Polaris, ■■■■■■■■, and provided it all of its assets, Microsemi retained substantial rights in and control over the assets it transferred to Polaris, including the '117 patent—rights that go beyond those retained by similarly situated transferors in multiple Federal Circuit cases where the purported patent owner was found to lack standing.  Polaris' arguments to the contrary are both legally and factually misplaced.  Polaris also is incorrect in arguing that Polaris can recover prudential standing via post-filing corporate amendments and that Defendants are not prejudiced by Microsemi's use of Polaris as a discovery shield.

### A.   Microsemi Misconceives the "All Substantial Rights" Test.

As a threshold matter, Plaintiff misconceives the "all substantial rights" test for determining whether a patent plaintiff has prudential standing.  The question is not whether, as Plaintiff repeatedly suggests, *Microsemi* retained all substantial rights in the '117 patent.  *See* Opp. at 1 (arguing that the issue to be determined by the Court is whether Microsemi "retained all substantial rights"); *id.* at 2 (suggesting that Defendants argue that Microsemi's right to ■■■ ■■■ "somehow conveyed to Microsemi all substantial patent rights").  Rather, the Court will "weigh[] the rights in the patent transferred [] against those retained [] to determine whether [the transferor] assigned all substantial rights in the patent, or fewer than all such rights." *Sicom*, 427 F.3d at 978.  In other words, even though a party (here Microsemi) may not have retained all substantial rights, it could have retained *enough* substantial rights such that the transferee-plaintiff (here Polaris) lacks all substantial rights and therefore lacks standing.

### B.   Microsemi Retained Substantial Rights in the '117 Patent, Such That Polaris Lacked Prudential Standing When This Suit Was Filed.

As discussed in Defendants' opening brief, because "[t]he right to dispose of an asset is an important incident of ownership," a "restriction on that right" is, by itself, "fatal to the argument

4

that [an] agreement transferred all substantial rights in the patent." *Propat*, 473 F.3d at 1191 (citing *Sicom*, 427 F.3d at 979). And here, Microsemi did not merely restrict Polaris' rights to dispose of the '117 patent; Microsemi ███████████████████████████████ Dkt. 65-6 at ███. Microsemi also retained, *inter alia*, further control over assignment and/or transfer of Polaris' rights in the '117 patent via ███████████████ Dkt. 65-6 at ███████████

███████████████████████████████████████████████████████████████

███████████████).

One of Plaintiff's primary arguments is that Microsemi's ███████████ and its ███████ power over Polaris' rights to assign or assert the '117 patent granted by the ████ ███████ provision (which required ████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████ or ███████████████████████████████

███████████████, Dkt. 65-6 at ███) do not bear on the prudential standing analysis because these rights belong to Polaris' Board, not Microsemi. Opp. at 21–22. According to Plaintiff, Defendants "conflate corporate governance with patent rights," and it must be noted that Polaris' Board members owe a fiduciary duty to Polaris. *Id.* But first, and most critically, this argument misapprehends the content of the LLC Agreement—the ███████████ belong to ███████ ███████████████████████, not ███████████████ Dkt. 65-6 at ███████████

███████████████████████████████████). Thus, Microsemi—not merely a ███████████ board member owing fiduciary duties to Polaris—had the power to command Polaris to ███████████████████████████████████████████████

███████████████. These directly exercisable ███████████ also disprove Polaris'

5

argument that Defendants' position depends solely on Microsemi's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *See, e.g.*, Opp. at 1.[4]

Further, even if the ▮▮▮▮▮▮ (like the ▮▮▮▮▮▮ provision) were exercised indirectly by the ▮▮▮▮▮▮ the "all substantial rights" analysis would still result in the same outcome. Polaris is Microsemi's patent assertion alter ego, and was controlled by Microsemi through ▮▮▮▮▮▮, Dkt. 65-6 at ▮▮—who, at the time this suit was filed, was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *id.* at ▮▮▮▮▮▮.

These provisions created the very situation that Plaintiff argues did not exist—the "risk of a second suit brought by Microsemi." Opp. at 29. Defendants were at risk of Microsemi ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991) ("The policy underlying the requirement to join the owner when an exclusive licensee brings suit is to prevent the possibility of two suits on the same patent against a single infringer.").

Plaintiff's only real response to this scenario is to suggest that Microsemi, after ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ would continue to operate Polaris as an independent entity with the same Board members. Opp. at 5 ("Even if Polaris were sold, Polaris would remain the legal owner of the Patent unless another assignment was executed."); *id.* at 23. This scenario—whereby Microsemi would ▮▮▮▮▮▮

---

[4] In neither *Mobilemedia Ideas, LLC v. Research in Motion Ltd.*, No. 11-cv-2353-N, 2013 WL 12124319 (N.D. Tex. June 18, 2013) nor *In re Google Litig.*, No. 08-03172 RMW, 2010 WL 5211545 (N.D. Cal. Dec. 16, 2010), cited by Plaintiff (Opp. at 4), did the transferor retain such directly exercisable rights over the disposition of the patent-in-suit as did Microsemi here.

███████████████████—not only defies common sense, it also contradicts the relevant agreements.  Polaris' September 2017 LLC Agreement stated that if ████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████, Dkt. 65-6 at ██████████, that the existing Board members ████████████████████████████████████ ██████████ id. at ██████████, and that Polaris ████████████████████████████ ████████████████████████████████████████████████████████████████ id. at ████████.

Microsemi's de facto control over the '117 patent through ████████████ and the ████████████████ are fatal to Polaris' standing.  *See, e.g.*, *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 620 (Fed. Cir. 2016) ("[r]etaining control of [licensing or litigation] activities is [] critical to demonstrating that the patent has not been effectively assigned to the licensee"); *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1342 (Fed Cir. 2006) ("A key factor has often been where the right to sue for infringement lies.").

Beyond retaining these critical rights affecting the disposition and assertion of the patent-in-suit, as shown in opening brief, Microsemi retained other substantial rights in the '117 patent.[5] Plaintiff wrongly dissects these individually, arguing that each such right considered in isolation is insufficient to constitute a substantial right in the '117 patent.  *See* Opp. at 20–26.  But the prudential standing analysis looks at the rights retained by Microsemi taken together—in aggregate, Microsemi certainly retained substantial rights in the '117 patent when Polaris filed suit.  *See AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F. 3d 1314, 1321 (Fed. Cir. 2009) ("While

---

[5] Microsemi also retained the following rights:  (a) entitlement to ████████████████████ ████████████████; (b) the ability to ████████████████████████████████████████ ██████████; and (c) responsibility for ████████████████████████████.  Mot. at 9–12.

7

any of these restrictions alone might not have been destructive of the transfer of all substantial rights, their totality is sufficient to do so.").

C. **Plaintiff's Attempts to Elevate Form Over Substance Are Unpersuasive.**

Confronted with these facts regarding Microsemi's direction of and control over Polaris and the patents Polaris is tasked with asserting, Plaintiff offers a number of form-over-substance arguments, all of which should be rejected, as discussed below.

1. **Microsemi Contributed All of Polaris' Assets and in Return Received ███.**

In its Opposition, Plaintiff repeatedly refers to Microsemi as ███ in an attempt to minimize Microsemi's role in this lawsuit. Opp. at 2, 6, 29. Polaris did indeed have ███████. Dkt. 65-2 at ███. But Plaintiff's characterization of Microsemi as ███ ignores that Microsemi (a) contributed all of the assets (both ██ and patents) to Polaris, and (b) in return received ███████. *Id.* As explained in Defendant's Motion, Dkt. 65 at 2–3, Microsemi's ███████ gave Microsemi substantial control over Polaris, including:

- The power to ███████, Dkt. 65-2 at ███ the power to ███████, *id.* at ███, and ███████, *id.* at ███;

- Through the ███████ and ███████, the power to ███████, *id.* at ███; and

- The right to ███████, *id.* at ███.

8

Tellingly, Polaris does not point to any meaningful rights that come with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. What this allocation did facilitate was that Polaris avoided ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[6] *See* Dkt. 4.

### 2. Plaintiff Ignores That Microsemi's "Assignment" Of The Patent to Polaris Was Made Subject To The Terms Of Microsemi's LLC, Contribution, and ▮▮▮▮ Agreements With Polaris.

Plaintiff argues at length that Microsemi was "unequivocally assigned to Polaris." Opp. at 13–16. But this contravenes the "Assignment" document, which states that the transfer of rights in the '117 patent was made "pursuant to the terms of the Contribution Agreement" and in turn incorporates Microsemi's July 2017 ▮▮▮▮ and LLC Agreements with Polaris. Mot. at 12 n.1 (citing Dkt. 65-5 at 1). It is the substance of the document that governs, not its title. *See, e.g.*, *Intellectual Prop. Dev. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1344 (Fed. Cir. 2001) ("The title of the agreement at issue . . . is not determinative of the nature of the rights transferred under the agreement; actual consideration of the rights transferred is the linchpin of such a determination."); *Diamond Coating*, 823 F.3d at 618 ("We have not allowed labels to control by treating bare formalities of 'title' transfer as sufficient to determine that an 'assignment' of the entire exclusive right has occurred.").

Plaintiff's attempts to distinguish *Clouding IP, LLC v. Google Inc.*, 61 F. Supp. 3d 421 (D. Del. 2014) and *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2016 WL 3186890, at *2 (D. Del. June 3, 2016) (finding similar agreements purporting to be "assignments" were actually exclusive licenses) rest on mischaracterizations of the record. In particular, Plaintiff's arguments

---

[6] When Polaris was founded in July 2017, Microsemi received ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 65-2 at ▮▮▮▮▮▮. However, Polaris also ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

9

that "Polaris' right to assign or license the ['117] Patent is unencumbered under the ▮▮▮ and Assignment" and that "Microsemi was merely ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," Opp. at 15–16, are simply incorrect. As shown above, the ▮▮▮▮▮ in Polaris' LLC Agreement gave Microsemi total control over ▮▮▮▮▮▮▮▮▮, and the ▮▮▮▮▮ requirement gave Microsemi de facto control over assertion of the '117 patent ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Mot. at 8–10.

      **3.    Because Microsemi Exercised Complete Control Over Polaris, The Court Should Look Beyond Polaris' Formal Corporate Identity.**

Plaintiff argues that if Polaris is found to lack prudential standing, "all corporate parents . . . that appoint a member to a subsidiary's board or have any influence over a subsidiary that owns a patent would be required to be plaintiffs in patent litigation . . ." Opp. at 3. This is an exaggeration. Defendants do not argue that every parent corporation and/or owner must join a patent lawsuit for a subsidiary to have standing—as "the issue of standing is rooted in the facts of each case." *Hologic, Inc. v. Minerva Surgical*, 163 F. Supp. 3d 118, 122 (D. Del. 2016). But where, as here, a parent exercises very significant control over a shell corporation designed with no purpose other than to assert the parent's patents, courts look beyond corporate identity, as further discussed below.

      **a)    Contrary To Plaintiff's Arguments, This Court And Others Look Beyond Corporate Identity When Analyzing Standing.**

Plaintiff argues that "Defendants ask the Court to make an unprecedented decision as to standing based on corporate governance theories that have been repeatedly and universally rejected by other courts around the country." Opp. at 2. But courts, including this Court, have routinely looked beyond formal corporate identities in assessing a patent plaintiff's standing.

10

In *Software Rights Archive, LLC v. Google Inc.*, this Court analyzed whether "a corporate identity should be disregarded . . . [u]nder the laws of Delaware" when assessing a motion to dismiss on standing grounds. 2009 WL 901361, at *1, 4 (E.D. Tex. Mar. 31, 2009). "[U]nder Delaware alter ego analysis," the Court noted, "the standard may be restated as: whether [the two entities] operated as a single economic entity such that it would be inequitable for this Court to uphold a legal distinction between them." *Id.* at *4 (citation omitted). "Factors that tend to show that the two entities are operating as a single economic unit are as follows:

> factors which reveal how the corporation operates and the particular [party's] relationship to that operation [, including] whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a façade for the dominant shareholder."

*Software Rights Archive,* 2009 WL 901361, at *4 (citation omitted).

Other courts have similarly analyzed whether a corporate identity should be discarded when analyzing a patent plaintiff's standing to file suit. For example, in *Hologic v. Minerva Surgical*, the Delaware court noted that "the mere fact of stock ownership or of a corporate relationship does not alone establish standing," but went on to hold that a parent corporation had standing to assert a patent where the "boundaries between the corporations [at bar] have been breached" and the parent "owned and exercised complete control over [the subsidiary], including control over all of [the subsidiary's] business decisions and [] patent enforcement, assignment, and licensing policies." 163 F. Supp. 3d at 122 (quotations omitted); *see also, e.g.*, *Atmel Corp. v. Authentec, Inc.*, 490 F. Supp. 2d 1052, 1055 (N.D. Cal. 2007) ("the parent company controlling the patent" and "the wholly-owned subsidiary that owned the patent" were "essentially one and the same"); *Steelcase Inc. v. Smart Techs., Inc.*, 336 F. Supp. 2d 714, 718 (W.D. Mich. 2004)

(parent corporation that "effectively had exclusive control of the [asserted] patent and was essentially one and the same with" the subsidiary that owned the patent was "a proper party in this case"); *Cognex Corp. v. Microscan Sys.*, 2014 WL 2989975, at *5–6 (S.D.N.Y. June 30, 2014); *Mi-Jack Prods., Inc. v. Taylor Grp., Inc.*, 1997 WL 441796, at *8 (N.D. Ill. July 30, 1997) (parent and subsidiary had standing to bring a patent infringement suit together based on their "close relationship . . . concerning the patent"—"indeed they are one and the same").

        **b)    Polaris was not an Independent Entity, but the Alter Ego of Microsemi.**

Each of the "alter ego" analysis factors set forth by this Court in *Software Rights Archive* (noted *supra*) indicate that Polaris has merely functioned as a façade for Microsemi, and thus should be treated as Microsemi's alter ego for purposes of standing to assert the '117 patent.

First, Polaris has failed to observe its own corporate formalities. *See Software Rights Archive*, 2009 WL 901361, at *6 (noting that the subsidiary "had no . . . corporate records[,] . . . director meetings, [or] shareholder meetings"). For example, the September 2017 LLC Agreement requires that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ be kept, Dkt. 63-4 at ▮▮▮▮▮▮, but as Plaintiff has conceded, "[t]here are no meeting minutes" or "any non-privileged email relating to the constitution of the board of Polaris," Dkt. 63-15 at 2. Notably, Plaintiff has insisted that the provisions of Polaris' governing agreements can be ignored entirely; as discussed in Defendants' Show Cause Motion, Plaintiff has attempted to retroactively amend its LLC Agreement to ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, even though that Agreement provides that it cannot ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dkt. 63 at 7–8.

Second, Polaris has no independent economic activity or purpose other than the assertion of Microsemi's patents. *See* Dkt. 65-3 at § 2.05. Polaris manufactures no products, performs no

research and development, and provides no services.  The only assets Polaris possesses are the patents licensed to Polaris by Microsemi and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see* Dkt. 65-2 at ▮▮▮; Dkt. 65-9 at ▮▮▮.  Polaris' employees and officers are all associated with Microsemi.  *See* Mot. at 2, 3, 10, 14.  And if attempts to monetize Microsemi's patents are successful, Microsemi will ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* Dkt. 65-2 at ▮▮▮; Dkt. 65-9 at ▮▮▮.

Third, as discussed *supra* in Section II.A, Microsemi structured Polaris so that Microsemi retained near complete control over Polaris.  *See Atmel Corp.*, 490 F. Supp. 2d at 1055 (finding that "the parent company controlling the patent" and its subsidiary that purportedly owned the patent "were 'essentially one and the same'").  Microsemi's ▮▮▮▮▮▮ rights gave it direct and absolute control over ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Dkt. 65-6 at ▮▮.  And because Microsemi ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Microsemi was able to control ▮▮▮▮▮▮, Dkt. 65-2 at ▮▮▮, and thus control critical decisions made by Polaris ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ through the ▮▮▮▮▮▮ provision, Dkt. 65-2 at ▮▮▮.  The very title of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 65-6 at ▮▮▮▮▮▮▮▮▮▮▮▮▮)—leaves no doubt as to who controls Polaris.

Finally, as noted by this Court in *Software Rights Archive,* "it would be inequitable to allow [Microsemi] to hide behind the corporate fiction," 2009 WL 901361, at *6, which has prejudiced Defendants by allowing Microsemi to withhold relevant discovery while simultaneously funneling the discovery Microsemi wants to disclose through Polaris, *see infra* at § II.E; Mot. at 13–15.

### D. Polaris' Lack of Standing Cannot be Corrected by the April 27 Amendments.

Plaintiff claims that the April 27 amendments to Polaris' governing agreements prepared by Microsemi "eliminated any alleged standing defects."  Opp. at 26–29.  But it is well settled

13

Federal Circuit law that a defect in prudential standing at the time a suit was filed, as exists here, cannot be cured through *nunc pro tunc* post-suit revisions to governing agreements.[7] *Alps South LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1384–85 (Fed. Cir. 2015) (holding that a plaintiff cannot correct a prudential standing "defect that existed at the time the complaint was filed by post-filing activity"). In support of its argument that prudential standing defects can be corrected by "acquiring patent rights," Plaintiff cites (Opp. at 26–27) pre-*Alps South* district court opinions (*Mobilemedia, Positive Tech.*).[8] In the *Mentor* case cited by Plaintiff, having discerned a prudential standing issue never raised by the parties, the Federal Circuit *sua sponte* ordered the parties to brief whether joinder of a necessary plaintiff was appropriate, noting this was appropriate in "rare circumstances." *Mentor H/S, Inc. v. Med. Device All., Inc.*, 240 F.3d 1016, 1019 (Fed. Cir. 2001). Plaintiff's characterization of the holding—"joining a party on appeal to correct standing" (Opp. at 27)—is misleading. In any event, the *Mentor* court did not hold, as Plaintiff argues, that a prudential standing defect can be cured by later "acquiring patent rights."

Plaintiff also argues that the cases cited by Defendants are inapposite because here, "there is no *nunc pro tunc* assignment." Opp. at 28. Plaintiff argues that "[t]he April 2018 amended agreements relate to changing ▮▮▮▮▮" and "do not make any changes

---

[7] Defendants do not dispute that a defect in prudential standing can be corrected by joinder of a necessary plaintiff. However, Polaris has never suggested that Microsemi be joined as a co-plaintiff, and Microsemi has consistently rejected any suggestion that it will become involved in this litigation as a co-plaintiff. *See, e.g.*, Opp., Ex. 4 (Dkt. 86-5) at 1 ("Microsemi is a non-party . . . and is not involved in this litigation"); Opp., Ex. 6 (Dkt. 86-7) at 1 ("I disagree with your characterization that Microsemi is other than a third party for purposes of this action").

[8] *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198 (Fed. Cir. 2005) is also inapposite. There, it was undisputed that "[a]t the time this action commenced, [Plaintiff] was the owner of the '860 patent and had standing." *Id.* at 1202. The Court held that when the plaintiff later assigned the patent away, it lost constitutional standing, but that when it later reacquired its stake in the patent before entry of judgment, this cured the standing defect. *Id.* at 1204. Unlike here, there was no other party holding substantial rights at the time of suit to be joined.

14

to the assignment from Microsemi." *Id.* But, as discussed above, the purported "assignment" of the '117 patent from Microsemi to Polaris was dependent upon the terms of the corporate agreements between the parties. *See* Dkt. 65-5 at 1. Regardless, Microsemi and Polaris also executed on April 27 an ███████████████████████████████████, Dkt. 65-11—just like the post-filing "amended license agreement" at issue in *Alps South*, 787 F.3d at 1384–85.

### E. Microsemi's Absence From the Litigation Continues to Prejudice Defendants.

Plaintiff correctly notes that, following Defendants' filing of the Motion to Dismiss on July 30, Microsemi has begun to produce documents (on August 13, 18, and 23), Opp. at 29–30, over three months after Defendants first served Microsemi with a document subpoena. But Defendants continue to suffer prejudice from use of Polaris as a discovery shield. Microsemi argues that it need only produce "narrowly tailored" discovery, Opp., Ex. 7 (Dkt. 86-8) at 3, even though virtually all relevant and discoverable evidence resides at Microsemi, not Polaris. Further, Microsemi has still failed to produce (and refuses to search for) e-mails requested by Defendants, Dkt. 68 at 14–15, and its status as a non-party allows it to not only avoid making the disclosures required by the Court (or answering interrogatories propounded by Defendants) but unfairly limits Defendants' deposition time of Microsemi witnesses, Dkt. 36 at 4.

## III.   CONCLUSION

Because Microsemi's numerous and significant retained rights in the patent-in-suit deprived Polaris from having "all substantial rights," Polaris lacks standing and this case should be dismissed.

Dated: September 7, 2018                    Respectfully submitted,

*/s/ Ranganath Sudarshan*
Melissa R. Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Phone: (903) 934-8450
Fax: (903) 934-9257

Ranganath Sudarshan
rsudarshan@cov.com
Grant Johnson
gjohnson@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Phone: (202) 662-6000
Fax: (202) 662-6291

Robert T. Haslam
rhaslam@cov.com
COVINGTON & BURLING LLP
333 Twin Dolphin Drive
Redwood Shores, CA 94065-1418
Phone: (650) 632-4700
Fax: (650) 632-4800

Matthew B. Phelps
mphelps@cov.com
Jennifer D. Cieluch
jcieluch@cov.com
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, New York 10018-1405
Phone: (212) 841-1178
Fax: (212) 841-1010

**COUNSEL FOR DEFENDANTS SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG ELECTRONICS CO., LTD., AND SAMSUNG DISPLAY CO., LTD.**

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 7th of September, 2018.

                                              */s/ Melissa R. Smith*
                                              Melissa R. Smith