# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| POLARIS POWERLED TECHNOLOGIES, LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG DISPLAY CO., LTD., | ) ) ) ) ) |
| Defendants. | ) |

Civil Action No. 2:17-cv-00715-JRG

**JURY TRIAL DEMANDED**

**[CORRECTED] REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING**

## **TABLE OF CONTENTS**

I. STATEMENT OF THE ISSUES ................................................................................................ 2

II. ARGUMENT .............................................................................................................................. 2

    A. Plaintiff Misconceives the "All Substantial Rights" Test. ...................................... 2

    B. Microsemi Retained Substantial Rights in the '117 Patent. .................................... 3

    C. Plaintiff's Attempts to Elevate Form Over Substance Are Unpersuasive. ............. 5

        1. Microsemi Contributed All of Polaris' Assets and in Return Received 100% of Polaris' Controlling "Class A" Shares. ........................ 5

        2. Microsemi's "Assignment" Of The Patent to Polaris Was Made Subject To The Terms Of Microsemi's Agreements With Polaris. ............. 6

        3. Because Microsemi Exercised Complete Control Over Polaris, The Court Should Look Beyond Polaris' Formal Corporate Identity. ................ 6

    D. Polaris' Lack of Standing Cannot be Corrected by the April 27 Amendments. ............................................................................................................ 9

    E. Microsemi's Absence From the Litigation Continues to Prejudice Defendants. .............................................................................................................. 10

III. CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**CASES**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
  2016 WL 3186890, at *2 (D. Del. June 3, 2016) .................................................................. 7

*Alps South LLC v. Ohio Willow Wood Co.*,
  787 F.3d 1379, 1384–85 (Fed. Cir. 2015) .......................................................................... 11, 12

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
  434 F.3d 1336, 1342 (Fed Cir. 2006) ..................................................................................... 5

*AsymmetRx, Inc. v. Biocare Med., LLC*,
  582 F. 3d 1314, 1321 (Fed. Cir. 2009) .................................................................................. 5

*Atmel Corp. v. Authentec, Inc.*,
  490 F. Supp. 2d 1052, 1055 (N.D. Cal. 2007) ................................................................... 9, 10

*Clouding IP, LLC v. Google Inc.*,
  61 F. Supp. 3d 421 (D. Del. 2014) ......................................................................................... 7

*Cognex Corp. v. Microscan Sys.*,
  2014 WL 2989975, at *5–6 (S.D.N.Y. June 30, 2014) ........................................................... 9

*Diamond Coating Techs., LLC v. Hyundai Motor Am.*,
  823 F.3d 615, 620 (Fed. Cir. 2016) ........................................................................................ 5

*Enzo APA & Son, Inc. v. Geapag A.G.*,
  134 F.3d 1090, 1093 (Fed. Cir. 1998) .................................................................................... 2

*Hologic, Inc. v. Minerva Surgical*,
  163 F. Supp. 3d 118, 122 (D. Del. 2016) ............................................................................... 8

*Intellectual Prop. Dev. v. TCI Cablevision of Cal., Inc.*,
  248 F.3d 1333, 1344 (Fed. Cir. 2001) .................................................................................... 7

*Mentor H/S, Inc. v. Med. Device All., Inc.*,
  240 F.3d 1016, 1019 (Fed. Cir. 2001) .................................................................................. 11

*Propat Intern. Corp. v. Rpost, Inc.*,
  473 F.3d 1187, 1191 (Fed. Cir. 2007) (citing *Sicom*, 427 F.3d at 979) ................................. 3

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
  427 F.3d 971, 978 (Fed. Cir. 2005) ........................................................................................ 3

*Software Rights Archive, LLC v. Google Inc.*,
   2009 WL 901361, at *1, 4 (E.D. Tex. Mar. 31, 2009) ...................................................... 8, 9, 10

*Steelcase Inc. v. Smart Techs., Inc.*,
   336 F. Supp. 2d 714, 718 (W.D. Mich. 2004) ............................................................................ 9

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*,
   944 F.2d 870, 875 (Fed. Cir. 1991) ............................................................................................ 4

Plaintiff's Opposition ("Opp.") to Defendants' Motion to Dismiss ("Mot.") cannot deny that Microsemi formed Polaris in July 2017 for the express purpose of ▮▮▮▮▮▮▮ of Microsemi. Dkt. 65-3 at ▮▮. Plaintiff also cannot deny that Microsemi contributed all of Polaris' assets, namely cash and certain Microsemi patents. *Id.* at ▮▮; Dkt. 65-6 at Schedule I. In return, Microsemi retained: (a) absolute control over the sale of Polaris and its assets, Dkt. 65-6 at § 7.3; (b) the power to appoint a "Microsemi Manager" to Polaris' Board who had ▮▮▮▮▮▮▮ rights, Dkt. 65-2 at § 8.2(b)(i), ▮▮; (c) the right to nearly all (96%) of Polaris' profits, *id.* at § 6.3; and (d) sublicensing rights for the asserted '117 patent, Dkt. 65-4 at § 2.2.

As Defendants noted, Microsemi's rights go beyond those retained by parties who similarly possessed substantial rights. *See* Mot. (Dkt. 65) at 8–13. In response, Plaintiff attempts to recharacterize these rights in a way that elevates form over substance. Specifically, Plaintiff argues that: (a) Microsemi transferred all '117 patent rights to Polaris because the transfer was titled an "Assignment," Opp. (Dkt. 86) at 12–16, even though Microsemi reserved rights in the patent; (b) Polaris and its Board should be viewed as independent entities from Microsemi, *id.* at 2–4, 20–22, even though Polaris and its officers were intertwined with Microsemi and did not obey corporate formalities; and (c) Microsemi was merely a "5% owner" of Polaris, *id.* at 2, 6; Dkt. 84 at 1–2, ignoring that Microsemi contributed all of Polaris' assets and owned all of its "Class A" shares.

But if Polaris never had a prudential standing problem, then why did Microsemi dramatically reduce its control over Polaris and its financial stake in the Polaris-Samsung litigation from 96% to 90% on April 27? Plaintiff's explanation for this dramatic change—that Polaris was "contemplat[ing] growing the company," Opp. at 10—is unsupported. A more plausible explanation is that Defendants had inquired regarding Polaris' standing, Polaris' responses were

1

due in three days,[1] and Microsemi recognized that the substantial rights it retained in the '117 patent had deprived Polaris of standing. Because under controlling Federal Circuit precedent "nunc pro tunc assignments are not sufficient to confer retroactive standing," *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998), dismissal is appropriate here.

I.  **STATEMENT OF THE ISSUES**[2]

Pursuant to Local Rule CV-7, the issues to be decided by the Court are:

1.  Whether Microsemi's control over assignment/transfer of the '117 patent and assertion of that patent in litigation, entitlement to at least 96% of any profits from asserting the '117 patent, and responsibility for ▮▮▮▮▮▮▮▮▮▮ resulted in Microsemi retaining substantial rights in the '117 patent at the time Polaris filed this suit and Polaris lacking prudential standing.

2.  Whether the April 27, 2018 agreements between Polaris and Microsemi can retroactively cure a prudential standing defect that existed at the time the present suit was filed.

II. **ARGUMENT**

Having founded Polaris and provided it all of its assets, Microsemi retained substantial rights in the '117 patent which go beyond those held by transferors in similar Federal Circuit cases finding a lack of standing. Plaintiff's arguments in response are legally and factually unpersuasive.

A.  **Plaintiff Misconceives the "All Substantial Rights" Test.**

Plaintiff misconceives the "all substantial rights" test for determining prudential standing. The question is not whether *Microsemi* retained all substantial rights in the '117 patent. *See* Opp. at 1, 2. Rather, the Court will "weigh[] the rights in the patent transferred [] against those retained [] to determine whether [the transferor] assigned all substantial rights in the patent, or fewer than

---

[1] Polaris' responses to these interrogatories were due on April 9, but Polaris requested that the deadline for its responses be extended to April 30. Dkt. 48 at 1.

[2] Defendants inadvertently omitted the required Statement of Issues in their opening brief.

2

all such rights." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 978 (Fed. Cir. 2005). In other words, even though Microsemi may not have retained *all* substantial rights, it retained *enough* substantial rights so that Polaris lacked all substantial rights and therefore lacked standing.

### B. Microsemi Retained Substantial Rights in the '117 Patent.

As Defendants noted, because "[t]he right to dispose of an asset is an important incident of ownership," a "restriction on that right" is, by itself, "fatal to the argument that [an] agreement transferred all substantial rights in the patent." *Propat Intern. Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007) (citing *Sicom*, 427 F.3d at 979). Microsemi did not merely restrict Polaris' right to dispose of the '117 patent; Microsemi completely retained that right via its "Drag-Along Rights," Dkt. 65-6 at § 7.3. And Microsemi retained *further* control over Polaris' disposal of its rights in the patent via the ▮▮▮▮▮ requirement. Dkt. 65-6 at ▮▮▮.

One of Plaintiff's primary arguments is that Microsemi's "Drag-Along Rights" and its ▮▮▮▮ power over Polaris' rights to assign or assert the '117 patent granted by the ▮▮▮▮ ▮▮▮▮ provision (Dkt. 65-6 at ▮▮) do not bear on the prudential standing analysis because these rights belong to Polaris' Board, not Microsemi. Opp. at 21–22. According to Plaintiff, Defendants "conflate corporate governance with patent rights," and Polaris' Board members owe a fiduciary duty to Polaris. *Id.* But critically, this argument misapprehends the content of the LLC Agreement—the "Drag-Along Rights" belong to Microsemi (i.e., the "Microsemi Member") <u>itself</u>, not the "Microsemi Manager," Dkt. 65-6 at § 7.3. Thus, Microsemi had the power to command Polaris to sell its assets (e.g., the patent-in-suit) to a buyer of Microsemi's choosing—including Microsemi itself—disproving Plaintiff's argument that Defendants' position depends solely on Microsemi's "right to appoint a single manager to Polaris'

three-person board of managers." *See, e.g.*, Opp. at 1.[3] And even if the "Drag-Along Rights" *were* exercised indirectly by the "Microsemi Manager," the "all substantial rights" analysis would still produce the same outcome. Polaris is Microsemi's patent assertion alter ego, and was controlled by Microsemi through the "Microsemi Manager" on Polaris' Board, Dkt. 65-6 at § 8.2.[4]

These provisions created the very situation that Plaintiff argues did not exist—the "risk of a second suit brought by Microsemi." Opp. at 29. Microsemi could have ordered Polaris to transfer the '117 patent rights back to Microsemi, which could then file a second suit against Samsung. *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991) ("The policy underlying the requirement to join the owner when an exclusive licensee brings suit is to prevent the possibility of two suits on the same patent against a single infringer.").

Plaintiff's only real response to this scenario is to suggest that Microsemi, after "dragging along" Polaris into an asset transfer back to Microsemi, would continue to operate Polaris as an independent entity with the same Board. Opp. at 5, 23. But this scenario not only defies common sense, it also contradicts Polaris' agreements. Polaris' September 2017 LLC Agreement stated that if Microsemi approves a sale of Polaris, Polaris must ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*i.e.*, assignment documents for the Microsemi patents), Dkt. 65-6 at ▮▮▮▮▮▮, that the existing Board members will ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* at ▮▮▮▮▮▮, and that Polaris ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* at ▮▮▮▮▮▮.

Microsemi's de facto control over the '117 patent through Drag-Along Rights and the ▮▮▮▮▮▮▮▮▮▮▮▮ are fatal to Polaris' standing. *See, e.g.*, *Diamond Coating Techs., LLC v.*

---

[3] In neither *Mobilemedia Ideas, LLC v. Research in Motion Ltd.*, 2013 WL 12124319 (N.D. Tex. June 18, 2013) nor *In re Google Litig.*, 2010 WL 5211545 (N.D. Cal. Dec. 16, 2010) (Opp. at 4), did the transferor retain such directly exercisable rights over the patent-in-suit as did Microsemi.

[4] At the time this suit was filed the "Microsemi Manager" was Keren Bender, Microsemi's Director of Legal Affairs and IP Monetization. Dkt. 65-6 at Exhibit C.

4

*Hyundai Motor Am.*, 823 F.3d 615, 620 (Fed. Cir. 2016) ("[r]etaining control of [licensing or litigation] activities is [] critical to demonstrating that the patent has not been effectively assigned to the licensee"); *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1342 (Fed Cir. 2006). And in addition to these critical rights, Microsemi retained other substantial rights in the '117 patent.[5] Plaintiff argues that each such right, considered in isolation, does not deprive Polaris of standing. *See* Opp. at 20–26. But the analysis looks at the rights retained by Microsemi taken *together*—and in total, Microsemi certainly retained substantial rights in the patent when Polaris filed suit. *See AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F. 3d 1314, 1321 (Fed. Cir. 2009).

    **C.**    **Plaintiff's Attempts to Elevate Form Over Substance Are Unpersuasive.**

        **1.**    **Microsemi Contributed All of Polaris' Assets and in Return Received 100% of Polaris' Controlling "Class A" Shares.**

In its Opposition, Plaintiff repeatedly refers to Microsemi as a mere "5% owner" of Polaris. Opp. at 2, 6, 29. Polaris did indeed have ▮ total shares outstanding at the time it filed suit, out of which ▮ were "Class B" shares issued to Messrs. Yocca and Brandi in exchange for nothing other than their service on the Polaris Board. Dkt. 65-6 at ▮. But Plaintiff's characterization of Microsemi ignores that Microsemi (a) contributed all of the assets (both cash and patents) to Polaris, and (b) in return received 100% of Polaris' 90 controlling "Class A" shares. *Id*. And as explained in Defendant's Motion, Mot. at 2–3, Microsemi's complete ownership of these "Class A" shares gave Microsemi substantial control over Polaris, including: (a) the power to appoint a "Microsemi Manager" to Polaris' Board, Dkt. 65-6 at § 8.2(b)(i), who exercised ▮ rights over Polaris' assertion of the '117 patent in (or settlement of) litigation and any sale/transfer of the '117 patent, *id.* at ▮; and (b) the right to nearly all (96%)

---

[5] *E.g.*, rights to 96% of profits from asserting the '117 patent, rights to grant ▮ sublicenses to its customers, and responsibility for ▮. Mot. at 9–12.

5

of Polaris' profits, *id.* at § 6.3. Tellingly, Polaris does not point to any meaningful rights that came with Messrs. Brandi and Yocca's "Class B" shares. What this allocation *did* facilitate was that Polaris avoided having to identify Microsemi in its Corporate Disclosure Statement.[6] *See* Dkt. 4.

### 2. Microsemi's "Assignment" Of The Patent to Polaris Was Made Subject To The Terms Of Microsemi's Agreements With Polaris.

Plaintiff argues at length that Microsemi was "unequivocally assigned to Polaris." Opp. at 13–16. But the "Assignment" document states that the transfer of patent rights was made "pursuant to the terms of the Contribution Agreement," which in turn incorporates Microsemi's License and LLC Agreements with Polaris. Mot. at 12 n.1 (citing Dkt. 65-5 at 1). It is the document's substance, not its title, that governs. *See, e.g.*, *Intellectual Prop. Dev. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1344 (Fed. Cir. 2001); *Diamond Coating*, 823 F.3d at 618.

Plaintiff's attempts to distinguish *Clouding IP, LLC v. Google Inc.*, 61 F. Supp. 3d 421 (D. Del. 2014) and *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2016 WL 3186890, at *2 (D. Del. June 3, 2016) are also unpersuasive. Specifically, Plaintiff's arguments that "Polaris' right to assign or license the ['117] Patent is unencumbered under the License and Assignment" and that "Microsemi was merely given a non-exclusive, non-transferable right to practice the patent . . . and a very narrow right to sublicense," Opp. at 15–16, are simply incorrect. As shown above, the "Drag-Along Rights" gave Microsemi total control over the transfer/assignment of the '117 patent, and the ▌▌▌▌▌▌▌▌▌▌ gave Microsemi control over the patent's assertion. Mot. at 8–10.

### 3. Because Microsemi Exercised Complete Control Over Polaris, The Court Should Look Beyond Polaris' Formal Corporate Identity.

---

[6] Because of the ▌▌ "Class B" Units, Microsemi's 90 "Class A" Units were only ▌▌ of Polaris' total outstanding shares, Dkt. 65-2 at Schedule I—just under Rule 7.1's 10% threshold.

Plaintiff argues that if Polaris lacks prudential standing, then "all corporate parents . . . that appoint a member to a subsidiary's board or have any influence over a subsidiary that owns a patent would be required to be plaintiffs . . . ." Opp. at 3. This is an exaggeration. Defendants do not argue that every parent corporation/owner must join a patent lawsuit for a subsidiary to have standing—as "the issue of standing is rooted in the facts of each case." *Hologic, Inc. v. Minerva Surgical*, 163 F. Supp. 3d 118, 122 (D. Del. 2016). But when a parent exercises significant control over a shell entity designed to assert the parent's patents, courts look beyond corporate identity.

### a)   This Court And Others Look Beyond Corporate Identity.

Plaintiff argues that "Defendants ask the Court to make an unprecedented decision as to standing based on corporate governance theories that have been repeatedly and universally rejected by other courts around the country." Opp. at 2. But courts, including this Court, have routinely looked beyond formal corporate identities in assessing a patent plaintiff's standing.

In *Software Rights Archive, LLC v. Google Inc.*, this Court analyzed whether "a corporate identity should be disregarded . . . [u]nder the laws of Delaware" when assessing a motion to dismiss on standing grounds. 2009 WL 901361, at *1, 4 (E.D. Tex. Mar. 31, 2009). "[U]nder Delaware alter ego analysis," the Court noted, "the standard may be restated as: whether [the two entities] operated as a single economic entity such that it would be inequitable for this Court to uphold a legal distinction between them." *Id.* at *4 (citation omitted). The Court provided several "[f]actors that tend to show that the two entities are operating as a single economic unit." *Id.*

Other courts have similarly analyzed the issue. For example, in *Hologic v. Minerva Surgical*, the Delaware court acknowledged that "the mere fact of stock ownership or of a corporate relationship does not alone establish standing," but held that a parent entity had standing where the "boundaries between the corporations [at bar] have been breached" and the parent "owned and exercised complete control over [the subsidiary], including control over all of [the subsidiary's]

7

business decisions and [] patent enforcement, assignment, and licensing." 163 F. Supp. 3d at 122 (quotations omitted). *See also, e.g.*, *Cognex Corp. v. Microscan Sys.*, 2014 WL 2989975, at *5–6 (S.D.N.Y. June 30, 2014); *Atmel Corp. v. Authentec, Inc.*, 490 F. Supp. 2d 1052, 1055 (N.D. Cal. 2007); *Steelcase Inc. v. Smart Techs., Inc.*, 336 F. Supp. 2d 714, 718 (W.D. Mich. 2004).

### b)   **Polaris was the Alter Ego of Microsemi.**

Each of the "alter ego" analysis factors set forth by this Court in *Software Rights Archive* (*supra*) indicate that Polaris should be treated as Microsemi's alter ego for purposes of standing.

First, Polaris has failed to observe its own corporate formalities. *See Software Rights Archive*, 2009 WL 901361, at *6. For example, the September 2017 LLC Agreement requires that ▮▮▮▮▮ and that ▮▮▮▮▮ be kept, Dkt. 65-6 at ▮▮▮▮, but Plaintiff concedes that "[t]here are no meeting minutes" or "any non-privileged email relating to the constitution of the board of Polaris," Dkt. 63-15 at 2. Further, Polaris attempted to amend its LLC Agreement to remove Dr. Tonkovich from its Board, even though the agreement states it cannot be amended without Dr. Tonkovich's written approval (which he did not give). Dkt. 63 at 7–8.

Second, Polaris has no independent economic activity or purpose other than the assertion of Microsemi's patents. *See* Dkt. 65-3 at ▮▮▮. Polaris manufactures no products, performs no research and development, and provides no services. The only assets Polaris possesses are the patent rights and cash provided by Microsemi. Dkt. 65-6 at ▮▮▮▮; Dkt. 65-9 at ▮▮▮▮. Polaris' employees/officers are all associated with Microsemi. *See* Mot. at 2, 3, 10, 14. And if Polaris successfully monetizes Microsemi's patents, Microsemi will reap nearly all of the profits from Polaris' assertion of Microsemi's patents. *See* Dkt. 65-6 at § 6.3; Dkt. 65-9 at § 2.03(b).

Third, as discussed *supra* in Section II.B, Microsemi structured Polaris so that Microsemi retained control over Polaris. *See Atmel Corp.*, 490 F. Supp. 2d at 1055 (finding that "the parent

8

company controlling the patent" and its subsidiary that purportedly owned the patent "were 'essentially one and the same'"). Microsemi's "Drag-Along" rights gave it control over the assignment and/or transfer of Polaris' assets. Dkt. 65-6 at § 7.3. And because Microsemi owned all Polaris' Class A shares, it was able to control Polaris' Board, *id.* at § 8.2, and thus control critical decisions made by Polaris through the ▇▇▇▇▇▇▇▇ provision, *id.* at ▇▇. The very title of Microsemi's appointed Board Member—the "***Microsemi Manager***," *id.* at § 8.2(b)(i) (emphasis in original)—leaves no doubt as to who controlled Polaris.

Finally, as noted by this Court in *Software Rights Archive,* "it would be inequitable to allow [Microsemi] to hide behind the corporate fiction," 2009 WL 901361, at *6, which has prejudiced Defendants by allowing Microsemi to withhold relevant discovery while simultaneously funneling the discovery Microsemi wants to disclose through Polaris, *see infra* at § II.E; Mot. at 13–15.

### D. Polaris' Lack of Standing Cannot be Corrected by the April 27 Amendments.

Plaintiff claims that the April 27 amendments to Polaris' governing agreements prepared by Microsemi "eliminated any alleged standing defects." Opp. at 26–29. But it is well settled Federal Circuit law that a defect in prudential standing at the time a suit was filed (as here) cannot be cured through *nunc pro tunc* post-suit revisions to governing agreements.[7] *Alps South LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1384–85 (Fed. Cir. 2015) (holding that a plaintiff cannot correct a prudential standing "defect that existed at the time the complaint was filed by post-filing activity"). In response, Plaintiff cites (Opp. at 26–27) pre-*Alps South* district court opinions (*Mobilemedia, Positive Tech.*).[8] In *Mentor H/S, Inc. v. Med. Device All., Inc.*, having discerned a

---

[7] Defendants do not dispute that a prudential standing defect can be corrected by joinder, but Microsemi has consistently rejected any involvement in this suit. Dkt. 86-5 at 1; Dkt. 86-7 at 1.

[8] *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198 (Fed. Cir. 2005) is also inapposite. There, it was undisputed that at the time of suit, "[Plaintiff] was the owner of the [] patent and had standing," with no other party holding substantial rights in the patent. *Id.* at 1202.

9

prudential standing issue never raised by the parties, the Federal Circuit *sua sponte* ordered the parties to brief whether joinder of a necessary plaintiff was appropriate, noting this was appropriate in "rare circumstances." 240 F.3d 1016, 1019 (Fed. Cir. 2001). Plaintiff's characterization of the holding—"joining a party on appeal to correct standing" (Opp. at 27)—is misleading. And the *Mentor* court did not hold that prudential standing can be cured by later "acquiring patent rights."

Plaintiff also argues that Defendants' cited cases are inapposite because here "there is no *nunc pro tunc* assignment," and because the April amendments "relate to changing the corporate ownership structure" instead of "the assignment from Microsemi." Opp. at 28. But the purported "assignment" was not only dependent upon the terms of the parties' corporate agreements, Dkt. 65-5 at 1; the parties *also* entered into an amended Patent License Agreement, Dkt. 65-11, just like the post-filing "amended license agreement" at issue in *Alps South*, 787 F.3d at 1384–85.

### E.     Microsemi's Absence From the Litigation Continues to Prejudice Defendants.

After Defendants filed the Motion to Dismiss on July 30, Microsemi has now begun to produce documents. Opp. at 29–30. But Defendants continue to be prejudiced from the use of Polaris as a discovery shield. Microsemi still argues that it need only produce "narrowly tailored" discovery, Dkt. 86-8 at 3, even though it possesses nearly all of Plaintiff's relevant discovery. Further, Microsemi has still not produced the e-mails Defendants requested, Dkt. 68 at 14–15, and Microsemi's non-party status allows it to avoid making the Court's disclosures and to avoid answering interrogatories, and limits Defendants' deposition time of its witnesses, Dkt. 36 at 4.

## III.    CONCLUSION

Because Microsemi's retained rights in the patent-in-suit deprived Polaris from having "all substantial rights" at the time it filed suit, Polaris lacks standing and this case should be dismissed.

Dated: September 12, 2018

Respectfully submitted,

*/s/ Ranganath Sudarshan*
Melissa R. Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Phone: (903) 934-8450
Fax: (903) 934-9257

Ranganath Sudarshan
rsudarshan@cov.com
Grant Johnson
gjohnson@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Phone: (202) 662-6000
Fax: (202) 662-6291

Robert T. Haslam
rhaslam@cov.com
COVINGTON & BURLING LLP
333 Twin Dolphin Drive
Redwood Shores, CA 94065-1418
Phone: (650) 632-4700
Fax: (650) 632-4800

Matthew B. Phelps
mphelps@cov.com
Jennifer D. Cieluch
jcieluch@cov.com
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, New York 10018-1405
Phone: (212) 841-1178
Fax: (212) 841-1010

**COUNSEL FOR DEFENDANTS SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG ELECTRONICS CO., LTD., AND SAMSUNG DISPLAY CO., LTD.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 12th of September, 2018.

*/s/ Melissa R. Smith*
Melissa R. Smith