IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| POLARIS POWERLED TECHNOLOGIES, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 2:17-CV-00715-JRG |
| SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG ELECTRONICS CO., LTD., SAMSUNG DISPLAY CO., LTD., | § § § § § | FILED UNDER SEAL |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Samsung Electronics America, Inc., Samsung Electronics Co., Ltd., and Samsung Display Co., Ltd.'s (collectively, "Defendants" or "Samsung") Motion to Dismiss for Lack of Standing (the "Motion"). (Dkt. No. 65.) Having considered the Motion, and for the reasons that follow, the Court finds that the Motion should be and hereby is **DENIED**.

I. **BACKGROUND**

LED Display Technologies, LLC ("LED Display") was formed as a Delaware limited liability company ("LLC") on July 21, 2017. (Dkt. No. 65-2, at 1 ("Original LLC Agreement").) At the time of its formation, LED Display was owned by Microsemi Corporation ("Microsemi"), Ralph Brandi, and Mark Yocca. (*Id.*) LED Display's Board of Managers was composed of three managers: a Microsemi Manager, a First Majority Manager, and a Second Majority Manager. (*Id.* § 8.2.) These three managers were initially David Goren, Ralph Brandi, and Mark Yocca, respectively. (*Id.* at Ex. C.) Around the time of its formation, LED Display entered into three agreements with Microsemi: (1) a Contribution Agreement (Dkt. No. 65-3), (2) a License Agreement (Dkt. No. 65-3), and (3) an Assignment Agreement (Dkt. No. 65-5). Collectively, these

three agreements addressed the transfer of intellectual property assets, including U.S. Patent No. 8,223,117 (the "'117 Patent"), from Microsemi to LED Display with the "[o]obligation to [m]onetize the [p]atents." (Dkt. No. 65-3 § 2.05.)

On September 25, 2017, Microsemi, Ralph Brandi, and Mark Yocca executed an Amended and Restated LLC Agreement for LED Display, now called Polaris PowerLED Technologies, LLC ("Polaris"). (Dkt. No. 65-6 ("First Amended LLC Agreement").) The Contribution Agreement was also amended to reflect Polaris's name change. (Dkt. No. 65-7 (the "Amended Contribution Agreement").) The First Amended LLC agreement named Keren Bender as the Microsemi Manager, Ralph Brandi as the First Majority Member, and Mark Yocca as the Second Majority Manager. (*See id.* at Ex. C.) There were no other changes from the First LLC Agreement.

On October 27, 2017, Polaris filed suit against Samsung, alleging patent infringement of the '117 Patent through the manufacture and sale of Samsung's Galaxy phones and tablets. (Dkt. No. 1 ¶ 19.) In general, the '117 Patent is directed to a "brightness control circuit" that adjusts the brightness of a display screen to conserve power, increase battery life, and reduce eye strain for the user. (*Id.* ¶¶ 16, 20.)

After filing suit, on April 27, 2018, Polaris amended its LLC agreement for a third time on April 27, 2018. (Dkt. No. 65-10.) Polaris also amended the Amended Contribution Agreement (Dkt. No. 65-9) and the License Agreement (Dkt. No. 65-11).

## II. LEGAL STANDARD

"A court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (collecting cases). "In order to have standing, the plaintiff in an action for patent infringement must be a 'patentee' pursuant to 35 U.S.C. §§ 100(d) and 281." *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275

F.3d 1378, 1384 (Fed. Cir. 2002). A "patentee" can be the owner of a patent, the owner's assignee, or a licensee who holds all substantial rights in the patent. *See id.*; *see also Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005); *Alps South, LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1382 (Fed. Cir. 2015) ("When a patent owner transfers all substantial rights, the transferee is treated as the patentee and has standing to sue.") (internal quotations omitted).

When a transfer of patent rights is at issue, whether the plaintiff has standing to sue depends on whether the agreement transferred all or fewer than all substantial rights in the patent. *See Sicom*, 427 F.3d at 976. "To determine whether a patent transfer agreement conveys all substantial rights under a patent to a transferee or fewer than all of those rights, a court must assess the substance of the rights transferred and the intention of the parties involved." *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1342 (Fed. Cir. 2001); *see also Alfred E. Mann Foundation For Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1358–59 (Fed. Cir. 2010). "[I]t is helpful to consider the rights retained by the grantor in addition to the rights transferred by the grantee." *Intellectual Prop.*, 248 F.3d at 1342. "[A] patent does not have multiple separate owners for purposes of determining standing to sue." *Cochlear Corp.*, 604 F.3d at 1359.

### III. ANALYSIS

As a preliminary matter, the Court **GRANTS** Defendants' Motion for Leave to File a Supplemental Brief in Support of Defendants' Motion to Dismiss for Lack of Standing. (Dkt. No. 151.) The Court therefore considers such briefing in its analysis.

At issue is whether Microsemi (the parent entity and original owner of the patent-in-suit) retained enough rights in the patent-in-suit such that Polaris (the patent assertion entity and record assignee) lacks standing to sue. Samsung, relying on the First LLC Agreement and the Assignment Agreement, argues that "Microsemi had effectively granted Polaris a *license* while retaining

significant rights in and control over the Microsemi Patents." (Dkt. No. 65, at 7.) Polaris responds that it is the assignee of the patent-in-suit, and thus, it has standing to sue.

Because standing is determined at the time this suit was filed, *see Abraxis*, 625 F.3d at 1364, the Court considers the applicable agreements that were in effect at that time—the Assignment Agreement (Dkt. No. 65-5), the Amended Contribution Agreement (Dkt. No. 65-7), the License Agreement (Dkt. No. 65-4), and the First Amended LLC Agreement (Dkt. No. 65-6).[1]

### A. The Assignment and Contribution Agreements

The Assignment Agreement identifies the '117 Patent as one of the patents transferred and assigned to Polaris. (Dkt. No. 65-5, at 1; *id.* at Ex. 1.) It further states that "it is the intention of [Microsemi] and [Polaris] that [Polaris] own the entire right, title and interest in and to the ['117 Patent]." (*Id.* at 1.) Under the Assignment Agreement, there is little doubt that it was the intention of both Microsemi and Polaris that the transfer of patent rights be an assignment. *See TCI Cablevision*, 248 F.3d at 1342; *see also* 35 U.S.C. § 261 ("patents, or any interest therein, shall be assignable in law by an instrument in writing").

The Assignment Agreement is subject to the Amended Contribution Agreement (Dkt. No. 65-7). (Dkt. No. 65-5, at 2.) The Amended Contribution Agreement defines "Microsemi Contributed Assets" to include "the Patent Rights of Microsemi listed on Exhibit B, together with all of the Microsemi's rights to sue and obtain damages and equitable relief for past, present and future infringement." (Dkt. No. 65-7 § 1.01.) The '117 Patent is listed on Exhibit B of the original Contribution Agreement.[2] (Dkt. No. 65-3 Ex. B.) The Amended Contribution Agreement further

---

[1] For simplicity, the Court may at times refer in the present-tense to facts that were true at the time this suit was filed but that have been altered by subsequent agreements.

[2] While Exhibit B to Dkt. No. 65-7 is blank, the Court accepts Defendants' undisputed representation that this amendment to the Contribution Agreement "did not affect Microsemi's retained rights in the Microsemi Patents." (Dkt. No. 65.)

provides that "Microsemi hereby contributes and delivers to [Polaris] and [Polaris] hereby acquires and accepts all of the Microsemi Contributed Assets." (Dkt. No. 65-7 § 2.02(a).) Both of these agreements, on their face, fully transferred all substantial rights in the '117 Patent from Microsemi to Polaris.

### B. The License Agreement

The License Agreement further demonstrates the intent behind these agreements. The License Agreement grants Microsemi a license to "make, have made, use, offer to sell, sell, and import Licensed Products" and grants the right to sub-license "to the extent necessary to allow [Microsemi's] customers to make, use, offer for sale, and sell products that incorporate Licensed Products sold to such customers." (Dkt. No. 65-4 §§ 2.1–2.) The License Agreement expressly states "the Licensed Patents are owned by and shall remain the sole and exclusive property of [Polaris]." (*Id.* § 6.) "[T]his Agreement does not convey to [Microsemi] any interest in or to the Licensed patents or the intellectual property rights therein or thereto other than the license rights set forth …." (*Id.*)

### C. The LLC Agreement

The First Amended LLC Agreement provides that Polaris is owned by three members: Microsemi, Ralph Brandi, and Mark Yocca. Per the Agreement, Polaris is managed by a board of managers. (*Id.* § 8.1.) Microsemi is entitled to appoint one manager to the three-manager board. (*Id.* § 8.2(b).) Due to super-majority voting requirements governing Polaris's ability to take certain actions, Microsemi's appointed manager can effectively veto any attempt by Polaris, among other things, to transfer any intellectual property rights (*id.* § 8.3(r)), to institute any suit for patent infringement against a Microsemi customer (*id.* § 8.3(f)), or to settle any legal action that requires the payment of more than $150,000 (*id.* § 8.3(e)(x)). Under the "Drag-Along Rights" provision of

the Agreement Microsemi may, in essence, unilaterally force the sale of Polaris. (Dkt. No. 65-6 § 7.3.) Additionally, the Agreement provides that Microsemi shall receive 96% of Polaris' net "operating cash." (*Id.* § 6.3(a).)

### D. Polaris is the Assignee of the Patent

The Court agrees with Polaris that Samsung conflates corporate governance with patent rights. The applicable agreements make clear that "[Polaris] own[s] the entire right, title and interest in and to the ['117 Patent]" (Dkt. No. 65-5, at 1) and that Microsemi's only interest in the patent is a non-exclusive license and a limited right to sub-license so as to effectuate the non-exclusive license (Dkt. No. 65-4 §§ 2.1–2). The remaining rights to which Samsung points are incident to Microsemi's ownership interest in Polaris; they are not rights to the '117 Patent itself. These corporate governance rights do not in any way limit Polaris's ownership of the '117 Patent for the purposes of standing.

Ownership of or rights to control a company do not equate to ownership of that separate company's property. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003); *see also* 35 U.S.C. § 261 ("patents shall have the attributes of personal property"). For example, an individual inventor might seek to monetize his invention by assigning *all* of his patent rights to a limited liability company wholly owned and solely controlled by the inventor. The inventor would be entitled to all profits generated by the company, would have the ability to direct all decisions made by the company, and could cause the company to alienate its patents at any time. However, the company, not the inventor, would be the person with legal standing to bring a patent infringement suit. *See Lans v. Digital Equipment Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (holding that a plaintiff-inventor, who assigned his patent to a corporation in which he was the sole shareholder and managing director prior to filing the action, lacked standing to sue); *Digitech Image Techs., LLC*

*v. Newegg Inc.*, No. 2:12–cv–01688–ODW, 2013 WL 1871513 at *4 (C.D. Cal. 2013) (noting that a parent-subsidiary relationship is insufficient to establish a parent's standing to sue and collecting cases). While the separation between a company and its subsidiary may at times be nothing but a fiction, it is a fiction that underpins the entirety of American corporate law. *See Dole*, 538 U.S. at 474; *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) ("incorporation's basic purpose is to create a distinct legal entity").

If total and complete control over a company and entitlement to 100% of its profits is not enough to establish standing in the parent—and thus deprive standing in the subsidiary—the limited powers and rights Microsemi has over Polaris are certainly not enough.

As a preliminary matter, the supermajority voting requirements do not vest any rights in Microsemi. Polaris is not managed by its members, who include Microsemi, but by a board of managers. Microsemi's appointed manager—indeed all the managers—possess these voting rights. Polaris's managers are not puppets of Microsemi. They owe a duty of loyalty to Polaris, under both the First Amended LLC Agreement and the laws of Delaware, and can be held personally liable for breaching that duty. (Dkt. No. 65-6 § 10.2(b).)

The closest Microsemi itself gets to having potential control over the '117 Patent is its ability to cause the sale of Polaris. However, even if Microsemi caused the sale of Polaris to itself, Microsemi and Polaris would still be in a parent–subsidiary relationship, which is insufficient to establish standing, unless and until Microsemi caused Polaris to reassign or in some other way transfer the patent rights to Microsemi. If being one step away from patent ownership does not convey standing, being two steps away will not either.

The cases that Samsung relies upon further illustrate this distinction. *Intellectual Property Development v. TCI Cablevision of California, Inc.* involved an exclusive license agreement that

7

required the consent of CPL, as a separate entity, to settle any lawsuit or institute any action in which CPL would be a necessary party. 248 F.3d 1333, 1336–37 (Fed. Cir. 2001). Similarly, in *Propat International Corp. v. Rpost, Inc.*, Propat required approval from Authentix, as a separate entity, to issue licenses, institute litigation, or assign any of its patent rights. 473 F.3d 1187, 1190 (Fed. Cir. 2007). By contrast, here, Polaris does not need approval from Microsemi for anything. Polaris only needs approval from its own board of managers. Though Polaris's internal governance might be favorable to Microsemi, this is not the same as Polaris requiring approval from a separate entity, Microsemi, to enforce or use its own patents.

Without the ability to directly control the use of Polaris's patents, Microsemi is merely a non-exclusive licensee who maintains a financial interest in Polaris's business operations. The Court finds that these interests are not sufficient to establish standing in Microsemi. *C.f. Propat*, 473 F.3d at 1192 (distinguishing that case from others that found standing because "[i]n this case, by contrast, the patentee must be consulted about and consent to licensing and litigation decisions, and retains an absolute right to prevent assignment of the licensee's interests"); *see also Patent Harbor, LLC v. Twentieth Century Home Fox Home Entm't*, No. 6:10-cv-607, 2012 WL 12842300, at *6 (E.D. Tex. Aug. 17, 2012) ("Whether [Assignor's] economic interest deprives [Assignee] of all substantial rights … depends on whether [Assignor] maintain[s] sufficient control over decisions that affect the rights of the … patent."). Polaris—not Microsemi—maintains complete control over decisions that affect the rights of the patent.

IV. **CONCLUSION**

Microsemi did not retain substantial rights in the '117 Patent. Rather, all substantial rights are solely owned by Polaris. Therefore, Polaris has standing to bring this lawsuit. Accordingly, the

Court is of the opinion that Samsung's Motion to Dismiss for Lack of Standing (Dkt. No. 65) should be and hereby is **DENIED**.

Additionally, the Samsung Defendants' Unopposed Motion for Oral Hearing Regarding Motion to Dismiss for Lack of Standing (Dkt. No. 176) is **DENIED AS MOOT.**

It is further **ORDERED** that this ruling will remain **PROVISIONALLY SEALED** until the Parties file joint proposed redactions. Such proposed redactions should include specific explanations for the necessity of such redactions as balanced against the Public's interest in open judicial proceedings. *See Richmond Newspapers v. Virginia*, 448 U.S. 555, 592 (1980) ("[O]pen trials are bulwarks of our free and democratic government: public access to court proceedings is one of the numerous 'checks and balances' of our system, because 'contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power.'") (quoting *In re Oliver*, 333 U.S. 257, 270 (1948)). The proposed redactions shall be filed within seven (7) days of this Order. Failure to submit timely proposed redactions will result in the complete unsealing of the Order, which, in such case, may not be redacted upon later motion made by the Parties.

**So Ordered this**
**Mar 28, 2019**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE