# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| POLARIS POWERLED TECHNOLOGIES, LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG DISPLAY CO., LTD., )<br><br>Defendants. ) | Civil Action No. 2:17-cv-00715-JRG<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' RESPONSE AND OBJECTION TO PLAINTIFF'S
(1) *DAUBERT* MOTION TO EXCLUDE AND (2) MOTION TO
STRIKE PORTIONS OF EXPERT REPORT OF DEFENDANTS'
TECHNICAL EXPERT DR. PHILIP HOBBS (DKT. 201)**

█████████████

## <u>TABLE OF CONTENTS</u>

Page

I.   INTRODUCTION ........................................................................................... 1

II.  ARGUMENT ................................................................................................. 1

    A.   Dr. Hobbs' Opinions on the Operation of the Prior Art Products Are Based on Reliable Methodologies. ................................................................. 1

    B.   Dr. Hobbs' Supplemental Invalidity Report Was Proper Rebuttal. ....................... 3

    C.   Dr. Hobbs' Noninfringement Opinions for the Accused DAB Phones Do Not Contradict the Court's Claim Construction Order. ........................................... 4

    D.   Dr. Hobbs' Opinions on the "Combined Signal" Are Consistent with the Court's Claim Construction and the Claim Language. ........................................... 5

    E.   Dr. Hobbs' Single-Reference Obviousness Opinion Was Sufficiently Disclosed in Samsung's Invalidity Contentions. ................................................ 7

    F.   Samsung's Invalidity Contentions Sufficiently Described Samsung's Invalidity Theory Concerning Written Description. ............................................... 8

    G.   Dr. Hobbs Fully Explained the Prior Art-Based Noninfringing Alternatives in His Report. ............................................................................. 9

    H.   Dr. Hobbs Properly Analyzed the Relative Value of the '117 Patent Based on the Prior Art, Non-Accused Features, and Noninfringing Alternatives. .......... 11

    I.   Dr. Hobbs Properly Formed Opinions on the '117 Patent's Value Based on Samsung's Patent and Applications. ...................................................... 12

    J.   Comparable License Agreements Were Properly Disclosed During Fact Discovery. ...................................................................................... 14

III.  CONCLUSION ........................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aylus Networks, Inc. v. Apple Inc.*,
   856 F.3d 1353 (Fed. Cir. 2017).................................................................5

*Carnegie Mellon Univ. v. Marvell Tech. Grp.*,
   No. 09-290, 2012 WL 5416440 (W.D. Pa. Nov. 2, 2012).......................................12

*Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*,
   No. 4:12-cv-0074, Dkt. 221 (E.D. Tex. Feb. 8, 2013)..........................................13

*Genband US LLC v. Metaswitch Networks Corp.*,
   No. 2:14-cv-33-JRG-RSP, Dkt. 413 (E.D. Tex. Jan. 7, 2016)...................................1

*KAIST IP US LLC v. Samsung Elecs. Co., Ltd.*,
   No. 2:16-cv-01314-JRG-RSP, 2018 WL 1833341 (E.D. Tex. Apr. 17, 2018)....................3–4

*PerdiemCo, LLC. v. Industrack LLC*,
   No. 2:15-cv-727-JRG-RSP, 2016 WL 8135383 (E.D. Tex. Oct. 24, 2016).........................1

*Retractable Techs. Inc. v. Becton, Dickinson & Co.*,
   No. 2:07-cv-250, 2009 WL 8725107 (E.D. Tex. Oct. 8, 2009)................................12, 13

*Salazar v. HTC Corp.*,
   No. 2:16-cv-1096, Dkt. 251 (E.D. Tex. May 1, 2018...........................................5–6

*SynQor, Inc. v. Artesyn Techs., Inc.*,
   709 F.3d 1365 (Fed. Cir. 2013)...............................................................10

*Wonderland NurseryGoods Co. v. Thorley Indus.*,
   No. 12-196, 2014 WL 241751 (W.D. Pa. Jan. 22, 2014)........................................12

*ZiiLabs Inc. v. Samsung Elecs. Co.*,
   No. 2:14-cv-203-JRG-RSP, 2015 WL 6690403 (E.D. Tex. Nov. 2, 2015).........................11

**Statutes**

35 U.S.C. § 112.................................................................................8

## TABLE OF EXHIBITS

| Exhibit Number | Description |
|---|---|
| 1. | Email from Garmin counsel D. Ayres to Samsung counsel J. Cieluch regarding subpoena response (November 20, 2018) |
| 2. | Email from Samsung counsel J. Cieluch to Garmin counsel D. Ayres and M. Ali regarding deposition (November 26, 2018) |
| 3. | Email from Polaris counsel R. Kramer to Samsung counsel J. Cieluch regarding Garmin deposition (November 27, 2018) |
| 4. | Email from Polaris counsel to Samsung counsel regarding Dr. Hobbs deposition (April 3, 2019) |
| 5. | Patent Owner's Preliminary Response, IPR2018-01262 (October 26, 2018) |
| 6. | Decision Denying Institution of *Inter Partes* Review, IPR2018-01262 (January 17, 2019) |
| 7. | Excerpts of Expert Report of Dr. Ravin Balakrishnan Relating to Infringement of U.S. Patent 8,223,117 (February 1, 2019) |
| 8. | *Salazar v. HTC Co.*, Case No. 2:16-CV-01096-JRG-RSP, Order granting HTC Co.'s Motion to Strike the Declaration of Roy A. Griffin III (May 1, 2018) |
| 9. | Expert Rebuttal Report of Paul K. Meyer (March 29, 2019) |
| 10. | Fry's Electronics sales records for Sony N50 Monitor (February 9, 2000 to May 8, 2011) |
| 11. | Garmin website for GTX 327 transponder (February 8, 2019) |
| 12. | Deposition Transcript of Raina Moon (December 13, 2018) |
| 13. | Deposition Transcript of Jungmin Gu (December 12, 2018) |
| 14. | *Frito-Lay North America, Inc. v. Medallion Foods, Inc.*, Case No. 4:12-CV-0074 - ALM, Order granting in part and denying in part Frito-Lay's Motion in Limine (February 8, 2013) |
| 15. | Korean Patent Application No. 10-2017-0098120 |
| 16. | Production letter regarding Samsung's document production volume SMSG014 (October 22, 2018) |
| 17. | Samsung technical document regarding accused feature |
| 18. | Samsung Second Amended Initial and Additional Disclosures (November 28, 2018) |
| 19. | Polaris Notice of 30(b)(6) Deposition to Samsung (November 12, 2018) |
| 20. | Samsung Responses and Objections to Polaris Notice of 30(b)(6) Deposition (November 27, 2018) |
| 21. | Deposition Transcript of Hyeog Jae Choi (December 19, 2018) |

## I.      INTRODUCTION

Polaris' ten-part motion fails to establish that any portions of Dr. Hobbs' opinions should be excluded. Also, as explained in Section II.D below, Samsung objects to the untimely 46-page declaration from Dr. Balakrishnan attached to the Motion, which contains new, substitute infringement opinions.

## II.     ARGUMENT

### A.      Dr. Hobbs' Opinions on the Operation of the Prior Art Products Are Based on Reliable Methodologies.

Polaris argues that Dr. Hobbs' analyses and opinions regarding two prior art systems should be stricken in their entirety (which really requests summary judgment of no invalidity as to those theories) ███████████████████████████████████████████ ██████. Mot. at 1–4. But Polaris did not and cannot cite any legal authority holding that source code is the only way to understand the operation of such devices. The law in this Court is to the contrary. *See Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, Dkt. 413, 5–6 (E.D. Tex. Jan. 7, 2016) (stating that "[t]here is no per se rule that an expert must analyze source code."); *PerdiemCo, LLC. v. Industrack LLC*, No. 2:15-cv-727-JRG-RSP, 2016 WL 8135383, at *4 (E.D. Tex. Oct. 24, 2016) ("To the extent [plaintiff] argues that [the expert] should have relied on the source code in reaching his opinions, this Court has recognized that review of source code is not always required.").[1]

Contrary to Polaris' fanciful story—that "Samsung actively avoided seeking information about the source code and learning about its operation," Mot. at 3—Samsung was ███████████ ██████████████████████████████████████████████████████ Polaris is well aware

---

[1] These cases involve opinions regarding infringement, but the same principle should apply to analysis of prior art products.

of these efforts because Samsung provided Polaris' counsel with ████████████████

████████████ Exs. 1, 2. As shown in the correspondence, ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ ████████████████

████████ [2]

████████████████████ Dr. Hobbs was able to rely on other, entirely sound

methodologies to determine how the devices operate. ████████████████████

██ ██████████████████████████████████████████████████████

████████████████████████████████████████

████████████ *See, e.g.*, Dkt. 201-3 (Hobbs Rep.) ¶¶ 206, 233–34, 250. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ In addition, Dr. Hobbs

tested a GTX 327 device that was first installed on an airplane in October 2003. *Id.* ¶ 207. His

testing confirmed details found in the documentation, in particular, that the GTX 327 has the same

"multiplier" and "dark level bias" as claimed. *Id.* ¶¶ 210–26. Dr. Hobbs separately examined the

internal design of this sample to confirm certain technical details, e.g., the type of microprocessor

and photocell. *See, e.g., id.* ¶¶ 236, 255. All of these reliable sources of information were amply

sufficient for Dr. Hobbs' invalidity analysis of the GTX 327.

---

[2] Polaris' argument that Samsung "oddly cancelled" the ████████████████ is equally misleading.
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████

Dr. Hobbs' analysis of the Sony monitor followed a similarly sound methodology. ████

████████████████████████████████████████████████████████████████████

████████████████████████████. *See, e.g.*, *id.* ¶¶ 340–41. ████████████████

████████████████████████████████████████████████████████. *Id.* ¶ 350. In

addition, Dr. Hobbs obtained a sample monitor and tested this functionality. *Id.* ¶¶ 344–54. His

testing confirmed that the graph accurately describes the operation of the monitor. *Id.* ¶ 354.

Dr. Hobbs relied on ample credible evidence to form his opinions, using a sound

methodological approach that meets the requirements of Fed. R. Evid. 702 and *Daubert*. To the

extent Polaris disagrees with Dr. Hobbs' opinions, those are issues for the jury to decide.

### B.       Dr. Hobbs' Supplemental Invalidity Report Was Proper Rebuttal.

The balance of factors weighs in favor of allowing Dr. Hobbs to serve his supplemental

report as Samsung explained in its motion for leave, Dkt. 203, and as will be further explained in

Samsung's forthcoming reply brief. Contrary to Polaris' arguments, Mot. at 4–5, Dr. Hobbs has

not changed his opinions. *See* Dkt. 201-4 (Hobbs Supp. Rep.) ¶ 3. Rather, Dr. Hobbs wrote his

supplemental report in order to respond to, *inter alia*, baseless accusations by Polaris' expert

Dr. Roberts that Dr. Hobbs hid and manipulated test data. *See, e.g.*, *id.* ¶ 22. Dr. Hobbs included

additional test data in order to rebut the suggestion that the results would have been different had

he tested more data points. *Id.* ¶¶ 17–19.

While Polaris complains of "severe prejudice," Mot. at 5, Samsung served Polaris the

supplemental report more than a week before Dr. Hobbs' deposition. Polaris cancelled (at the last

minute) an entire reserved day of deposition time, foregoing hours of questioning Dr. Hobbs on

his supplemental report. *See* Ex. 4 (Apr. 3, 2019 Email). For the reasons explained in Samsung's

motion for leave, Samsung should be granted leave to serve Dr. Hobbs' supplemental report, and

Polaris' request to strike it should be denied. *See KAIST IP US LLC v. Samsung Elecs. Co., Ltd.*,

No. 2:16-cv-01314-JRG-RSP, 2018 WL 1833341, at *2 (E.D. Tex. Apr. 17, 2018) ("Given KAIST's reasonable diligence, the importance of the supplement, and the lack of prejudice, the Court finds good cause and will grant leave . . . ").

### C.     Dr. Hobbs' Noninfringement Opinions for the Accused DAB Phones Do Not Contradict the Court's Claim Construction Order.

Polaris is wrong that Dr. Hobbs' noninfringement opinions on certain limitations of claim 1 contradict the Claim Construction Order. Mot. at 5–7. Much of Polaris' argument relies on inaccurate characterizations of Dr. Hobbs' opinions. For example, Dr. Hobbs never █████████ ██████████████████████████████████████████████████████████████████████████████ ███████████████████ *Id.* at 5–6. On the contrary, Dr. Hobbs expressly stated:

> I note that the Court, in its claim construction order, has ruled that there is no "temporal order of operations" for the claimed "multiplier." **My opinion here does not rely on any temporal order of operations. Rather, I have relied on the court's ruling that the "dark level bias" limitation must be understood in accordance with its plain and ordinary meaning and thus must adjust the "combined signal" (as recited by the claim) and not some other signal** ███████ █████████████████████████████████████████.

Dkt. 201-5 (Hobbs Reb. Rep.) ¶ 227 n.7 (internal citations omitted) (emphasis added). Polaris' motion omits any mention of the above passage.

Similarly, Dr. Hobbs never stated that ████████████████████████████████████ █████████████████████████████████████████ as Polaris alleges. Mot. at 7. Instead, Dr. Hobbs appropriately noted that Dr. Balakrishnan's infringement opinion did not analyze the plain language of the claims as construed by the Court. Dkt. 201-5 (Hobbs Reb. Rep.) ¶ 227 n.7. Specifically, claim 1 recites "a dark level bias configured to adjust the combined signal," which the Court construed as having its "plain and ordinary meaning without the need for further construction." Dkt. 138 at 21, 25. ██████████████████████████████████████ ████████████████████████████████████████████████████████████████

███████████████████████████████  ████████████████████████

██████████████ Mot. at 6. In this regard, Polaris has disclaimed any argument that claim 1 covers

████████████████████████████████████████, instead of the "combined signal."[3]

For these reasons, Polaris' request to strike these portions of Dr. Hobbs' report should be denied.

### D.     Dr. Hobbs' Opinions on the "Combined Signal" Are Consistent with the Court's Claim Construction and the Claim Language.

As an initial matter, Samsung objects to the forty-six page declaration from Dr. Balakrishnan containing a new, substitute infringement theory for Samsung's accused televisions. Dkt. 201-22.[4] Polaris did not move for leave to submit this declaration, which effectively amounts to a supplemental expert report, and which was filed after Dr. Balakrishnan's deposition. Any attempt by Polaris to argue that these opinions are not new would be mistaken— if Polaris wished to rely on opinions that Dr. Balakrishnan had already articulated, it could have simply submitted portions of his report rather than this lengthy new "declaration." Samsung therefore requests that Dr. Balakrishnan's new declaration be struck and Dr. Balakrishnan not be allowed to testify at trial to any opinions contained therein. *See Salazar v. HTC Corp.*, No. 2:16-

---

[3] In the *inter partes* review proceeding for the '117 Patent, Polaris argued that "the claim language requires that 'the combined signal' is adjusted by the dark level bias to generate a *new* 'brightness control signal.'" Ex. 5 (Patent Owner Resp.) at 60 (emphasis added); *see also id.* at 58. The Board relied on this representation in denying institution. Ex. 6 (Institution Decision) at 12 ("Patent Owner further argues neither [reference] discloses "adjust[ing] the combined signal with a 'dark level bias' . . . We agree with Patent Owner."); *id.* at 15 ("Petitioner has not established . . . the dark level bias adjustment of the combined signal as claimed."). Accordingly, Polaris is now precluded from arguing that the "dark level bias" does not need to adjust the "combined signal." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359, 1361–62 (Fed. Cir. 2017).

[4] For example, Dr. Balakrishnan first opined that ███████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████ Mot. at ¶¶ 10, 23, 28, 38, 53, 67, 80, 92.

cv-1096, Dkt. 251 (E.D. Tex. May 1, 2018) (Ex. 8) (striking untimely declaration on infringement issues submitted by plaintiff's expert in response to a summary judgment motion).

Polaris incorrectly argues that Dr. Hobbs "directly contradicts the Claim Construction Order by requiring that the 'combined signal' be the 'mathematical product.'" Mot. at 7. Dr. Hobbs nowhere states that ████████████████████████████████████ as Polaris alleges—instead, Dr. Hobbs points out that *Dr. Balakrishnan* failed to follow the language of the claims and the Court's construction. The Court held that the "combined signal" "includes, but is not necessarily limited to, the product of the user signal and the sensing signal," and all of the asserted claims require that "<u>the</u> sensing signal" must be "output" by the "light sensor." Dkt. 138 at 15. Dr. Hobbs opines, consistent with this construction and claim language, that ██████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ Dkt. 201-5 (Hobbs Reb. Rep.) ¶ 196 (emphasis added). Indeed, Polaris admits that ████████████████████ ████████████████████████████████████████████ Mot. at 7–8. Dr. Hobbs' analysis focuses on ████████████████████ ████████████████████████████████████████████ ██████████████████ Polaris' motion ignores the claim's language requiring the "sensing signal" to be output by the light sensor; Dr. Hobbs is entitled to point out ████████████ ████████████████████████.[5]

Polaris' argument regarding Dr. Hobbs' alleged "attempts to exclude scaling terms," Mot. at 9, should similarly be rejected as misleading. Samsung does not dispute that the sensing signal

---

[5] Samsung has moved for summary judgment of noninfringement on this basis. *See* Dkt. 197.

output by the light sensor can be scaled as disclosed in the patent (for example, the scalar multiplication repeatedly cited by Polaris, *id.*).[6] What Dr. Hobbs has stated in his report, however, is that he disagrees with Polaris' expert that  Dkt. 201-5 (Hobbs Reb. Rep.) ¶ 258 Thus, this presents at best a fact issue for the jury as to whether

### E.   Dr. Hobbs' Single-Reference Obviousness Opinion Was Sufficiently Disclosed in Samsung's Invalidity Contentions.

Polaris incorrectly argues that Samsung failed to adequately disclose in its contentions Dr. Hobbs' single-reference obviousness theory related to the LX1970 Production Data Sheet. Mot. at 9. Samsung charted the LX1970 datasheet in its invalidity contentions. *See* Dkt. 201-15 (LX1970 Chart). The claim chart explained that:

> [t]o the extent that Polaris contends that the LX1970 . . . does not disclose one or more limitations of the claims, it would have been obvious to combine the disclosure of the LX1970 . . . with: (1) the knowledge of one of ordinary skill in the art to show all the limitations of the claims . . .

*Id.* at 1. Samsung's contentions explained that "[a] single prior art reference, for example, can establish obviousness where the differences between the disclosures within the reference and the claimed invention would have been obvious to one of ordinary skilled in the art." Dkt. 201-13 (Invalidity Contentions) at 10–12. Thus, Samsung preserved a single-reference obviousness theory based on LX1970.

Dr. Hobbs' discussion of a "variable resistor" simply expounds on the contentions by explaining that it would have been obvious to implement any differences between the datasheet

---

[6] The '117 Patent does not discuss ██████████ —nor did the Court's *Markman* Order, which merely noted the patent's discussion of scalar multiplication. Dkt. 138 at 17, 18, 25.

and the claim using a variable resistor or potentiometer in the manner he describes. *See* Dkt. 201-3 (Hobbs Rep.) ¶ 299 ("[u]sing variable resistors for this purpose was well known in the art for many, many years prior to the '117 patent"). Because this opinion falls within the scope of the single-reference obviousness argument for the LX1970 datasheet disclosed in the contentions, Dr. Hobbs should be permitted to offer this opinion.

### F.   Samsung's Invalidity Contentions Sufficiently Described Samsung's Invalidity Theory Concerning Written Description.

Polaris is also wrong that Samsung failed to sufficiently disclose its written description defense in its contentions. Mot. at 11. Samsung's contentions disclosed Samsung's theory that claim 1 is invalid because it does not meet the written description requirement of 35 U.S.C. § 112, ¶ 1. *See* Dkt. 201-13 (Invalidity Contentions) at 173–76. As Polaris acknowledges, Mot. at 11, Samsung's contentions as to failure of written description call out the particular limitation in claim 1: "a multiplier configured to selectively generate a combined signal based on both the user signal and the sensing signal" (claim 1). *See* Dkt. 201-13 (Invalidity Contentions) at 175.

Polaris complains about Dr. Hobbs' reference to software in his written description opinion, but that opinion is tied directly to the multiplier limitation—the one and only limitation of claim 1 expressly identified in the Samsung's invalidity contentions.[7] As Dr. Hobbs explained: "I see only these two uses of the word 'software' in the specification, none of which provides any disclosure of an actual algorithm or technique for implementing the claimed '**multiplier**.'" Dkt. 201-3 (Hobbs Rep.) ¶ 282. (emphasis added).[8]

---

[7] During the meet-and-confer regarding this motion, Polaris' counsel explained its impression that Samsung's contentions had listed every single element of the claim as lacking written description, but as Samsung's counsel explained, this is not so. This misunderstanding was evidently the basis of Polaris' motion, as the meet and confer took place hours before Polaris filed this motion.

[8] Samsung will not offer written description opinions from Dr. Hobbs on elements of claim 1 other than the "multiplier" limitation.

Furthermore, Polaris does not and cannot argue any prejudice here. The written description requirement is analyzed based on the four corners of the filed application, and Polaris has not articulated any actions it would have taken in rebutting Samsung's contention had the contention included a reference to "software."

### G. Dr. Hobbs Fully Explained the Prior Art-Based Noninfringing Alternatives in His Report.

Polaris makes a litany of incorrect charges regarding the prior-art based alternatives identified by Dr. Hobbs. First, contrary to Polaris' argument, Mot. at 11–12, Dr. Hobbs' analysis *did* identify three specific prior art alternatives: (1) Microsemi LX1970, (2) Sony monitor, and (3) Garmin GTX 327.[9] Dkt. 201-5 (Hobbs Reb. Rep.) ¶¶ 309–10. In Dr. Hobbs' invalidity report, he detailed how each of these three systems, alone and in combination with other prior art, implemented automatic brightness control. *See generally* Dkt. 201-3 (Hobbs Rep.). Dr. Hobbs incorporated sections of his opening report describing each of these systems and how they produce similar benefits as the purported invention. Dkt. 201-5 (Hobbs Reb. Rep.) ¶¶ 309–10.

Second, Polaris is incorrect that Dr. Hobbs fails to explain how the accused products would implement these prior art methods, Mot. at 12. In his report, Dr. Hobbs explains ████████ ████████████████████████████████████████████████████████████████. Dkt. 201-5 (Hobbs Reb. Rep.) ¶¶ 309–10. For example, Dr. Hobbs determined the specific autobrightness algorithms in the GTX 327 and Sony monitor. *See*, *e.g.*, Dkt. 201-3 (Hobbs Rep.) ¶¶ 225, 311, 353. As Dr. Hobbs explained, Samsung could have ████████████████ ████████████████████████████ Dkt. 201-5 (Hobbs Reb. Rep.) ¶ 312.

---

[9] Dr. Hobbs also identified specific Samsung predecessor products as noninfringing alternatives, but Polaris' motion to strike is limited to only the prior art methods described by Dr. Hobbs.

Third, Polaris is mistaken that Dr. Hobbs fails to opine that the noninfringing alternatives would be commercially acceptable. Mot. at 12. Dr. Hobbs explained that the noninfringing alternatives achieve the same benefits as described in the '117 Patent—automatic control of display brightness based on a combined user input and ambient light signal. Dkt. 201-5 (Hobbs Reb. Rep.) ¶¶ 310–11. Samsung's damages expert Mr. Meyer explains further that these products would be commercially acceptable to consumers. Ex. 9 (Meyer Rep.) ¶ 167. Polaris cites to no authority that all information about commercial acceptability must come from a single expert. Moreover, Samsung has produced additional evidence that these devices were actually sold to consumers or are still available on the market. Ex. 10 (Fry's Sales); Ex. 11 (GTX 327 Website).

Fourth, Polaris' complaint that Dr. Hobbs did not explain the availability, cost, and time to implement the prior art methods, Mot. at 12, again fails because these are not hypothetical alternatives; they are prior art systems that were *actually sold*. The *SynQor* case is inapposite insofar as the portion of this case on which Polaris relies notes an "inference that the substitute was not 'available.'" Mot. at 12 (citing *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1382 (Fed. Cir. 2013)). Such an inference could not possibly apply to real-world systems like the GTX 327, Sony, and LX1970 which, as explained above, were actually sold.

Finally, Polaris wrongly complains that Samsung did not fully respond to Polaris' interrogatories regarding noninfringing alternatives. Mot. at 12–13. Samsung specifically identified the exact noninfringing alternatives on which Dr. Hobbs opined—Samsung's predecessor products (e.g., Galaxy S2), and the LX1970, Sony monitor, and GTX 327. Dkt. 201-18 (Resp. to Inter.) at 26–27. Samsung also responded that predecessor products (like the S2) were previously sold by Samsung, these prior art techniques were available alternatives by their very nature as prior art, and these alternatives would be commercially acceptable based on (for example)

customer reviews and sales data. *Id.* Polaris cites no authority that Samsung needed to do anything more.[10]

Polaris' prejudice argument, Mot. at 12–13, is unavailing as Polaris' expert Dr. Balakrishnan addressed every noninfringing alternative in Samsung's response to the interrogatories. Ex. 7 (Balakrishnan Rep.) ¶¶ 817–37. Additionally, Samsung identified the persons with knowledge of the alternatives, and Polaris deposed both witnesses on this topic. *See* Ex. 12 (Moon Dep.) 27:6–28:2, 61:18–74:19; Ex. 13 (Gu Dep.) 53:20–55:9, 60:2–21.

### H. Dr. Hobbs Properly Analyzed the Relative Value of the '117 Patent Based on the Prior Art, Non-Accused Features, and Noninfringing Alternatives.

Polaris argues that Dr. Hobbs' opinion that the '117 Patent, if infringed, contributes ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, should be stricken as arbitrary. Mot. 13–14. Contrary to Polaris' argument, Dr. Hobbs' ▮▮▮▮ opinion is well-grounded in an analysis based on his considerable technical expertise. *See* Dkt. 201-5 (Hobbs Reb. Rep.) ¶¶ 264–313. In particular, Dr. Hobbs opines that the '117 Patent provides minimal value to the accused automatic brightness control feature based on: (1) the plethora of prior art and the fact that the '117 Patent is limited to a specific implementation, *id.* ¶¶ 268–72; (2) the purported benefits are largely due to the prior art and other non-accused features, *id.* ¶¶ 273–97; and (3) the available noninfringing alternatives, *id.* ¶¶ 298– 312. Dr. Hobbs then concluded, in view of his detailed analysis, that "the '117 Patent could not contribute any more than ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.* ¶ 313. While Polaris asserts that he is not qualified to provide an opinion about what drives Samsung's sales, Mot. at 13–14, Dr. Hobbs actually provides no such opinion, so that argument should be disregarded.

---

[10] *ZiiLabs Inc. v. Samsung Elecs. Co.*, No. 2:14-cv-203-JRG-RSP, 2015 WL 6690403, at *2–3 (E.D. Tex. Nov. 2, 2015) is inapposite because Samsung in fact disclosed the prior art noninfringing alternatives in response to Polaris' interrogatory.

Dr. Hobbs further explains that his ▮ opinion is a conservative estimate and "would likely be even lower because the real value of these features comes from Samsung's proprietary algorithms," which provide the same purported benefits (e.g., lower power consumption) without any user input (i.e., without infringing the patent). *Id.* Polaris argues that Dr. Hobbs' does not provide "a quantitative" basis for how he arrived at ▮, Mot. at 13; however, Polaris cites no cases suggesting such opinions need to be derived with mathematical precision. Any purported concerns regarding this opinion go to weight, not admissibility.

**I.** **Dr. Hobbs Properly Formed Opinions on the '117 Patent's Value Based on Samsung's Patent and Applications.**

Dr. Hobbs references Samsung's patent and applications for two proper purposes—to rebut certain opinions from Polaris' experts regarding the value of the accused features, and to support Samsung's response to Polaris' willfulness allegations. Dr. Hobbs does not, as Polaris asserts, reference these documents "to imply that [Samsung] does not infringe by having its own patents." Mot. at 14. No such assertion—or suggestion of such an argument—appears in Dr. Hobbs' report.

First, Samsung appropriately referenced its own patenting activity to demonstrate the value that should be apportioned to the asserted patent. "[E]vidence of Defendant's development efforts and intellectual property, including patents, may be relevant to a reasonable royalty analysis." *Retractable Techs. Inc. v. Becton, Dickinson & Co.*, No. 2:07-cv-250, 2009 WL 8725107, at *8 (E.D. Tex. Oct. 8, 2009).[11] In his report, Dr. Hobbs properly relies on Samsung's patent and applications, among other evidence, to show that the accused devices have a multitude of features

---

[11] *See also Wonderland NurseryGoods Co. v. Thorley Indus.*, No. 12-196, 2014 WL 241751, at *2 (W.D. Pa. Jan. 22, 2014) ("[E]vidence regarding the four patents issued to [defendant] are relevant in the calculation of an appropriate reasonable royalty . . . ."); *Carnegie Mellon Univ. v. Marvell Tech. Grp.*, No. 09-290, 2012 WL 5416440, at *2 (W.D. Pa. Nov. 2, 2012) (finding that "evidence regarding [defendant's] patents, the size and scope of [defendant's] patent portfolio, and the complexity of the patents-in-suit, are relevant to . . . the existence of no acts of copying/willfulness . . . and *miscalculation of alleged damages*" (emphasis added)).

beyond what is claimed by the '117 Patent. *See* Dkt. 201-5 (Hobbs Reb. Rep.) ¶¶ 174–76. For example, Dr. Hobbs explains that U.S. Patent Application No. 2015/0103059 "teaches gradual adjustment of display brightness similar to how brightness adjustment is performed in the accused TVs," *id.* ¶ 294, and that U.S. Patent No. 9,424,804 "explains that brighter screens are better for the user in brighter environments and darker screens are better for the user in darker environments," *id.* ¶ 293—an accurate high-level description of the autobrightness functionality of all accused products. Samsung's damages expert then relied on this technical analysis in opining regarding a reasonable royalty. *See* Ex. 9 (Meyer Rep.) ¶¶ 176, 201, 218, 326.

Second, "Defendants should be allowed to present evidence of independent development to rebut allegations that Defendant willfully infringed or that Defendant copied Plaintiffs' technology. Such development efforts purportedly include development of intellectual property, such as patents." *Retractable Techs.*, 2009 WL 8725107, at *8; *see also Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, No. 4:12-cv-0074, Dkt. 221 at 1 (E.D. Tex. Feb. 8, 2013) (Ex. 14). Dr. Hobbs' opinions, which illustrate the extent to which Samsung has expended its own independent development efforts relating to the accused functionality, are relevant for the jury in considering Samsung's alleged willfulness. Most notably, Samsung's Korean patent application "describes the Dynamic Autobrightness Control and Personalized Autobrightness Control functionality" accused by Polaris. Dkt. 201-5 (Hobbs Reb. Rep.) ¶ 157; *see also id.* ¶¶ 158–64, 295.

Polaris claims that Samsung "fail[ed] to timely disclose . . . the Korean patent application." Mot. at 14. But Samsung produced the Korean-language patent application on October 22, 2018, well before the close of fact discovery. *See* Ex. 15 (Kr. Pat. App.); Ex. 16 (Oct. 22, 2018 Prod.). Importantly, the analysis in Dr. Hobbs' report centers not on the ***text*** of that application, but its

*figures*, which are nearly identical to translated technical documentation produced by Samsung in early 2018 describing the accused functionality. *See* Dkt. 201-5 (Hobbs Reb. Rep.) ¶¶ 158–59, 161–62 (describing "nearly identical" graphs); Ex. 17 (SMSG_00044244) (produced May 18, 2018). Further, in November 2018—still well before fact discovery closed—Samsung disclosed that Raina Moon, a Samsung engineer, had knowledge of this patent application. Ex. 18 (Nov. 28, 2018 Samsung Disclosures) at 7. Polaris subsequently deposed Ms. Moon and chose not to explore this topic. Polaris should not now claim any prejudice from Dr. Hobbs' reliance on these issues.

### J.   Comparable License Agreements Were Properly Disclosed During Fact Discovery.

Polaris' argument to exclude Dr. Hobbs' opinions regarding technical comparability of license agreements, Mot. 14–15, should be rejected.[12] Polaris alleges a purported failure to respond to Polaris' discovery requests. But Polaris asked Samsung to *identify* the comparable licenses, and Samsung timely provided that information. Dkt. 201-18 (Resp. to Inter.) at 29–30. Polaris' request never asked for the *basis* for comparability. Moreover, Samsung objected that comparability "requires an expert opinion in advance of the deadline for expert opinions to be exchanged in this case" and identified each of the thirteen license agreements it produced in this case. *Id.* Polaris never demanded supplementation during discovery, apparently appreciating that the *basis* of comparability is an expert issue.

Samsung also provided a 30(b)(6) witness to testify concerning the circumstances surrounding the produced licenses. Polaris argues that the witness refused to answer questions regarding technical comparability, Mot. at 15, but similar to the interrogatory referenced above, Polaris never requested a designee on the *basis* of comparability, instead limiting its request to the

---

[12] Polaris' argument in this section largely tracks its argument in its motion challenging Samsung's damages expert, Mr. Meyer. *See* Dkt. 192, §§ III.A.2, III.B. Samsung therefore incorporates by reference here its response to those arguments. *See* Dkt. 227 (Opp. Mot. Strike Meyer).

"facts and circumstances surrounding" the license agreements. *See* Ex. 19 (Polaris 30(b)(6) Notice) at Topic 40. Samsung accordingly agreed "to designate a witness to provide reasonably ascertainable information about the produced license agreements." Ex. 20 (Samsung 30(b)(6) Resp.) at 37. At the deposition, when Samsung's witness was asked about comparability to the '117 Patent, Samsung's counsel properly objected that the question fell outside the scope of noticed topics, and the witness ██████████████████████████████████████████ ███████████████ *See, e.g.*, Ex. 21 (Choi Dep.) 23:12–25, 28:2–29:10, 34:18–36:1, 41:6–17, 46:17–50:9. After the deposition, Polaris never followed up to demand testimony regarding the basis of comparability, which is, again, a matter for expert testimony in any event.

Polaris argues that Dr. Hobbs should not be allowed to opine on the Monolithic license because Samsung did not identify the agreement during discovery. Mot. at 15. But the agreement only came to Samsung's attention after Polaris served its opening damages report claiming, surprisingly, that ████████████████████████████████. ███████████████████ ██████████ the publicly available lump-sum Monolithic license, it was appropriate for Dr. Hobbs to opine in his rebuttal report regarding the technical comparability of this agreement. Polaris' real complaint is that ████████████████████████████ made by its expert. Finally, Polaris' prejudice argument fails because its expert, Dr. Balakrishnan, addressed the comparability of each of these license agreements in his infringement report. Ex. 7 (Balakrishnan Rep.) ¶¶ 795–816.

## III.   CONCLUSION

Samsung respectfully requests that the Motion be denied in its entirety, and Dr. Balakrishnan's new declaration be stricken.

Dated: April 11, 2019

Respectfully submitted,

*/s/ Ranganath Sudarshan*
Ranganath Sudarshan (rsudarshan@cov.com)
Grant Johnson (gjohnson@cov.com)
Richard Rothman (rrothman@cov.com)
Kevin Richards (krichards@cov.com)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Phone: (202) 662-6000
Fax: (202) 662-6291

Robert T. Haslam (rhaslam@cov.com)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Phone: (650) 632-4700
Fax: (650) 632-4800

Philip A. Irwin (pirwin@cov.com)
Matthew B. Phelps (mphelps@cov.com)
Jennifer D. Cieluch (jcieluch@cov.com)
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, New York 10018-1405
Phone: (212) 841-1178
Fax: (212) 841-1010

**COUNSEL FOR DEFENDANTS SAMSUNG
ELECTRONICS AMERICA, INC., SAMSUNG
ELECTRONICS CO., LTD., AND SAMSUNG
DISPLAY CO., LTD.**

Leonard E. Davis
ldavis@fr.com
FISH & RICHARDSON P.C.
1717 Main Street
Suite 5000
Dallas, TX 75201
Phone: (214) 747-5070
Fax: (214) 747-2091

Melissa R. Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Phone: (903) 934-8450
Fax: (903) 934-9257

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via electronic mail and the Court's CM/ECF system per Local Rule CV-5(a)(3) this 11th of April, 2019.

/s/ Ranganath Sudarshan
Ranganath Sudarshan

## CERTIFICATE OF CONFERENCE

As it relates to Samsung's objection and request to strike Dr. Balakrishnan's declaration attached to Polaris' motion, I hereby certify compliance with the meet and confer requirements set forth in Local Rule CV-7(h). Counsel for Samsung, Ranga Sudarshan, conferred with counsel for Polaris, Robert Kramer, in person on April 5, 2019 and over subsequent emails thereafter. Polaris indicated that it opposes the relief sought by Samsung. Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

/s/ Ranganath Sudarshan
Ranganath Sudarshan